CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SYNDICATES 2623/623
v.
SOLUTIONS RECOVERY CENTER, LLC, DANIEL J. CALLAHAN, SEAN CALLAHAN,
and RICHARD GLASER

# EXHIBIT B

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

---

# FRONT PAGE TO POLICY

## IMPORTANT NOTICE – FLORIDA

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**



**MISCELLANEOUS MEDICAL PROFESSIONAL LIABILITY, GENERAL LIABILITY AND ADVERTISING LIABILITY CLAIMS MADE AND REPORTED INSURANCE**

**DECLARATIONS**

This is a Claims Made and Reported Policy. Except to such extent as may otherwise be provided herein, the coverage afforded under this Insurance is limited to those **Claims** which are first made against the **Insured** and reported during the **Policy Period**. **Damages** and **Claims Expenses** shall be applied against the Deductible. Certain words and phrases which appear in bold type have the special meaning agreed by the parties in Clause V., Definitions. Words with capitalized first letters only shall have the further meaning provided in the Declarations or as the context may require. Please review the coverage provided by this Insurance carefully and discuss it with your insurance agent or broker.

These Declarations along with the completed and signed application and the Policy with endorsements shall constitute the contract between the **Named Insured** and the Underwriters.

| | |
|---|---|
| **Underwriters:** | Syndicates 2623/623 at Lloyd's |
| **Policy Number:** | W15F3F170401 |
| **Authority Ref. Number:** | B6012BUSANMSL1701 |

Item 1.   **Named Insured:** Solutions Recovery Center, LLC

   **Address:**
   6115 Lyons Road
   Coconut Creek, FL 33073

Item 2.   **Policy Period:**      From:      17-June-2017

                                  To:         17-June-2018

Both dates 12:01 a.m. Local Time at the Principal Address shown in Item 1.

Item 3.   **Limit of Liability:**

   (a) Each **Claim**                                      $1,000,000

   (b) Term Aggregate- all coverages combined              $3,000,000

Item 4.   **Deductible:**

   Professional Liability Each **Claim** Deductible        $10,000

   General Liability Each **Claim** Deductible             $10,000

Item 5.   **Premium:**

   a.   The premium paid in respect of the entire **Policy Period**

F00534
012017 ed.
Date Issued: 20-Jul-2017 2:28:40 PM

Page 1 of 4





Plus taxes as applicable, which shall be payable in full at inception of this Insurance as designated in Item 2. of the Declarations

**Extended Reported Period:**

| | |
|---|---|
| b.   Premium for **Extended Reporting Period**: | c. Length of **Extended Reporting Period**: |
| 150% of the premium shown in 5.a. | One (1) Year |
| 175% of the premium shown in 5.a. | Two (2) Years |
| 200% of the premium shown in 5.a. | Three (3) Years |

Item 6.   **Retroactive Date:**

Coverage shall apply only to those **Claims** reported pursuant to the terms and conditions of the Policy arising out of **Professional Services** described herein and performed subsequent to the date below:

17 June 2013

Item 7.   **Service of Suit:**

Service of Suit upon the Underwriters pursuant to Clause XXIII. of the Policy may be made upon:

Mendes & Mount, LLP
750 7th Ave # 24
New York, NY 10019

Item 8.   **Notice of Election:**

Recipient of Notice of **Named Insured's** Cancellation:
Beazley USA Services, Inc.
30 Batterson Park Road
Farmington, Connecticut 06032
Tel: (860) 677-3700
Fax: (860) 679-0247

Recipient of Notice of **Named Insured's** intention to purchase **Extended Reported Period** Coverage and premium for **Extended Reported Period** Coverage:

Beazley USA Services, Inc.
30 Batterson Park Road
Farmington, Connecticut 06032
Tel: (860) 677-3700
Fax: (860) 679-0247

Item 9.   **Notice of Claim:**

Recipient of Notice of **Named Insured's Claims** or circumstance per Condition XI. of the Policy:

Beazley Healthcare Claims

F00534
012017 ed.
Date Issued: 20-Jul-2017 2:28:40 PM

Page 2 of 4



1270 Avenue of the Americas
Suite 1200
New York, NY 10020
Tel: (646) 943-5900
Fax: (646) 348-4039
Email: healthcareclaims@beazley.com

Item 10.   **Scheduled Insureds/Physicians:**

None, unless listed by endorsement

Item 11.   **Scheduled Professional Services:**

Inpatient & Outpatient Adult Addiction Facility

Item 12.   **Choice of Law:**

Florida

Item 13.   **Endorsements Effective at Inception:**

| | | |
|---|---|---|
| 1. | NMA1256 | Nuclear Incident Exclusion Clause-Liability-Direct (Broad) (U.S.A.) |
| 2. | NMA1477 | Radioactive Contamination Exclusion Clause-Liability-Direct (U.S.A.) |
| 3. | NMA2918 | War and Terrorism Exclusion Endorsement |
| 4. | E00861 032015 ed. | Premium Payment Warranty Endorsement |
| 5. | E00985 032015 ed. | Retroactive Limitations Clause |
| 6. | E01114 032015 ed. | Worldwide Coverage Endorsement |
| 7. | E01122 032015 ed. | Minimum Earned Premium Endorsement |
| 8. | E01762 062016 ed. | Fire Legal Liability Endorsement |
| 9. | E02804 032011 ed. | Sanction Limitation and Exclusion Clause |
| 10. | E02867 032015 ed. | Scheduled Locations/Facilities Coverage |
| 11. | E05076 032015 ed. | Additional Insured Endorsement for Landlords, Sponsors or Lessors. |
| 12. | E05809 032015 ed. | Medical Payments Extension |
| 13. | E06900 032015 ed. | U.S. Terrorism Risk Insurance Act of 2002 as Amended Not Purchased Clause |
| 14. | E08304 042016 ed. | Amend Sexual/Physical Misconduct Exclusion with Sublimit |
| 15. | E09387 112016 ed. | Additional Named Insureds Subject to Retroactive Date and Termination Date |
| 16. | BSLMU05120809FL | Important Notice - Florida |
| 17. | SCHEDULE2017 | Lloyd's Security Schedule 2017 |

F00534
012017 ed.
Date Issued: 20-Jul-2017 2:28:40 PM

Page 3 of 4

beazley

Dated:      20-July-2017

At:         30 Batterson Park Road
            Farmington, Connecticut 06032
            (the office of the Correspondent)      by _____

                                                        Beazley USA Services, Inc. (Correspondent)

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**

<u>**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)**</u>

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

<u>This Policy</u>* does not apply:

I.     Under any Liability Coverage, to injury, sickness, disease, death or destruction:

    (a)     with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b)     resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

    (a)     the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
    (b)     the nuclear material is contained in spent fuel or waste at any time possessed,
    handled, used, processed, stored, transported or disposed of by or on behalf of
    an insured; or

    (c)     the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the

planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.   war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.   any act of terrorism.

   For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### PREMIUM PAYMENT WARRANTY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

All premium due to the Underwriters under this Policy is paid within 30 Days from the inception date of the Policy.  Non-receipt of such premium by midnight (local standard time) on the premium due date, shall render this Policy void from the inception date.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**RETROACTIVE LIMITATIONS CLAUSE**</u>

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

There shall be no liability hereunder in respect of any **Claim**:

(a)     arising out of any circumstance or occurrence which has been notified to the insurer of any other Policy of insurance, self insurance or trust effected prior to the inception of this Policy;

(b)     arising out of any circumstance or occurrence known to the **Insured** prior to the inception hereof and not disclosed to the Underwriters at inception;

(c)     arising out of any prior or pending litigation as of the inception of this Policy or derived from the same facts and/or circumstances alleged in such prior or pending litigation.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**WORLDWIDE COVERAGE ENDORSEMENT**</u>

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause III. **TERRITORY** of this Policy is deleted in its entirety and replaced with the following:

**III.      TERRITORY**

This insurance applies to **Claims** brought anywhere in the world arising out of negligent acts, errors or omissions or **Accidents** which take place anywhere in the world. Such **Claims** must be first made against the **Insured** during the **Policy Period** or **Extended Reporting Period**, purchased in accordance with Clause IX.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that if the **Named Insured** cancels this Insurance prior to reporting any **Claim** or circumstance under this Policy, 30% of the premium shall be deemed earned upon inception of the Policy, and the remaining earned premium shall be computed in accordance with the customary short rate table and procedure.  If the **Named Insured** has reported a **Claim** or circumstance under this Policy the premium will be deemed to be fully earned.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

FIRE LEGAL LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.  Clause **I.**, **INSURING AGREEMENTS** is amended by the addition of the following:

    Fire Legal Liability

    The Underwriters will pay on behalf of the **Insured Damages** and **Claims Expenses** which the **Insured** shall become legally obligated to pay because of any **Claim** or **Claims** for **Property Damage** to the premises, while rented to the **Named Insured** (designated in Item 1. of the Declarations) or temporarily occupied by the **Named Insured** with permission of the owner arising out of any one fire during the **Policy Period** or any applicable **Extended Reporting Period**, except as excluded or limited by the terms, conditions and exclusions of this Policy.

2.  The Underwriters' Limit of Liability for **Damages** and **Claims Expenses** resulting from **Claims** as respects **Property Damage** in regards to the Fire Legal Liability Coverage shall be $50,000 each and every **Claim**, which amounts shall be part of and not in addition to the Aggregate Limit of Liability set forth in Item. 3(b) of the Declarations. Solely with respect to any **Claims** for Fire Legal Liability, the Deductible of $10,000 applies separately for each and every **Claim**.

3.  With respect to Fire Legal Liability coverage only, Clause **IV. EXCLUSIONS 2.** is amended by the addition of the following paragraph at the end thereof:

    Exclusions (h) and (i) do not apply to **Property Damage** to structures or portions thereof rented to or occupied by the **Named Insured**, including fixtures permanently attached thereto, if such **Property Damage** arises out of fire.

4.  Clause **IV. EXCLUSIONS 2.** (h) is deleted and replaced with the following:

    (h)  to any **Claim** arising out of, or **Occurrence** involving **Property Damage** to:

        (1)  property owned, rented or temporarily occupied by the **Named Insured** with permission of the owner, including fixtures permanently attached thereto;

        (2)  premises sold or abandoned by the **Named Insured**;

        (3)  property loaned to the **Named Insured**

        (4)  personal property in the care, custody or control of the **Named Insured**;

        (5)  that particular part of real property on which the **Named Insured** or any contractors or subcontractors working directly or indirectly on behalf of the **Named Insured** or temporarily occupied by the **Named Insured** as to premises rented to the **Named Insured** or temporarily occupied by the **Named Insured** with permission of the owner if such **Property Damage** arises out of those operations.

(6) that particular part of any property that must be restored, repaired or replaced because the **Insured's** work was incorrectly performed on it.

Paragraph 1. of this Exclusion does not apply to **Property Damage** to premises rented to the **Named Insured** or temporarily occupied by the **Named Insured** with permission of the owner, if such **Property Damage** arises out of fire.

Paragraph 2. of this Exclusion does not apply if the premises are the **Insured's** work and were never occupied, rented or held for rental by the **Named Insured**.

Paragraphs 3, 4, 5. & 6. of this Exclusion does not apply to liability assumed under a sidetrack agreement.

Paragraph 6. of this Exclusion does not apply to **Property Damage** included in any **Products/Completed Operations Liability Hazard** coverage.

5. For purposes of coverage provided under this Endorsement, **Clause X.  OTHER INSURANCE** is amended by the addition of the following:

The insurance provided for **Property Damage** to the structures or portions thereof rented to or temporarily occupied by the **Named Insured**, including fixtures permanently attached thereto, where coverage is provided under Paragraph 1. above of this Endorsement, shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the **Insured**.

6. Under no circumstances will this coverage be extended to cover First Party **Property Damage** or **Property Damage** to personal property.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>SANCTION LIMITATION AND EXCLUSION CLAUSE</u>

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, law or regulations of the European Union, United Kingdom or United States of America.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E02804                                                                                                            Page 1 of 1
032011 ed.

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

### SCHEDULED LOCATIONS/FACILITIES COVERAGE

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that coverage under this Policy shall apply to the following facilities or locations scheduled below:

| Location Name | Location Address | Retroactive Date |
|---|---|---|
| #1 | 18708 Ocean Mist, Palm Beach, FL 33498 | 17 June 2013 |
| #2 | 10607 Palm Spring Drive, Boca Raton, FL 33428 | 17 June 2013 - Terminated: 30 June 2017 |
| #3 | 9288 South Hampton Place, Boca Raton, FL 33434 | 17 June 2013 |
| #4 | 6115 Lyons Road, Coconut Creek, FL 33073 | 12 December 2014 |
| #5 | 9739 Majorca Place, Boca Raton, FL 33434 | 27 April 2015 |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E02867
032015 ed.

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>ADDITIONAL INSURED ENDORSEMENT FOR LANDLORDS, SPONSORS OR LESSORS</u>

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that with respect to General Liability coverage only:

1.    Clause **II. PERSONS INSURED** is amended by the addition of the following:

Any landlord, owner, or property manager of the Covered Location scheduled in paragraph 3. below; or any tradeshow or convention sponsor or operator; or any lessor of equipment scheduled in paragraph 2 below. However, coverage provided for purposes of this endorsement, shall apply solely:

a.    to **Claims** first made and reported to the **Insured** during the **Policy Period** or any **Extended Reporting Period**, if purchased;

b.    for **Claims** arising out the **Named Insured's** occupancy of, or failure to maintain the Covered Location scheduled in paragraph 3. below, but solely with respect to the products, goods or operations of the **Named Insured** and only if liability for such **Claim** is determined to be solely the negligence or responsibility of the **Named Insured**; and

c.    for **Occurrences** or **Accidents** at, on or upon that portion of the Covered Location which is occupied by the **Named Insured** and taking place during the term of the **Named Insured's** lease/occupancy of such Covered Location scheduled in paragraph 3. below.

Provided, however, that coverage afforded to the Additional Insured scheduled in paragraph 2. below shall not apply to:

(i)    Any **Occurrence** or **Accident** which takes place after the **Named Insured** ceases to be a tenant in that premises;

(ii)    Structural alterations, new construction or demolition operations performed by or on behalf of the Additional Insured scheduled in paragraph 2. below;

(iii)    **Bodily Injury**, **Property Damage** or **Advertising Liability** arising out of the sole negligence of the Additional Insured, unless covered under paragraph b. above;

(iv)    **Bodily Injury**, **Property Damage** or **Advertising Liability** arising out of the claimed negligence of the Additional Insured other than directly caused by the **Named Insured's** work in the ownership, maintenance or use of that part of the premises leased to the **Named Insured** which shall be imputed to the Additional Insured scheduled in paragraph 2. below; or

(v)    **Bodily Injury**, **Property Damage** or **Advertising Liability** to any employee of the **Named Insured** or to any obligation of the Additional Insured scheduled in paragraph 2. below, to indemnify another because of **Damages** arising out of such injury.

2.      Additional Insured:

      1. Time Payment Corp

        16 Northeast Executive Park, Suite # 200

        Burlington MA 01803

      2. 6115 Lyons Road

        Coconut Creek, FL 33073

3.      Covered Locations:

4.      In addition to the provisions of Clause **XIX. CANCELLATION**, in the event Underwriters cancel this Policy for any reason other than non-payment of premium, Underwriters will provide 30 Days written notice to the Additional Insured after notifying the **Insured.**

      However, this advance notification of pending cancellation of coverage is intended as a courtesy only.  Underwriters' failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**MEDICAL PAYMENTS EXTENSION**</u>

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that with respect to General Liability Coverage only:

1.      The Underwriters will pay medical expenses as described below for **Bodily Injury** caused by an **Accident**:

      a.      On premises the **Named Insured** owns or rents;

      b.      On ways next to the premises the **Named Insured** owns or rents; or

      c.      Because of the **Named Insured's** operations;

 Provided that:

      d.      The **Accident** takes place in the Coverage Territory and during the **Policy Period**;

      e.      The expenses are incurred and reported to the Underwriters within one year of the date of the **Accident**;

      f.      The injured person submits to an examination, at Underwriters expense, by physicians of Underwriters choosing as often as the Underwriters reasonably require.

The Underwriters will make these payments regardless of fault.  These payments will not exceed the applicable Limit of Liability in paragraph 2. below.  Underwriters will pay reasonable expenses for:

      a.      first aid administered at the time of the **Accident**;

      b.      necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      c.      necessary ambulance, hospital, professional nursing and funeral services.

2.      The Underwriters' Limit of Liability for all **Damages** arising from any one **Claim** for medical expenses shall be $5,000 per **Claim** subject to a maximum Aggregate Limit of Liability under this policy of $25,000, which amounts shall be part of and not in addition to the Aggregate Limit of Liability set forth in Item 3.(b) of the Declarations.  Solely with respect to any **Claims** for medical expenses, the Deductible of $10,000 applies separately for each and every **Claim**.

3.      Clause IV. 2. **EXCLUSIONS** is amended by the addition of the following:

The Underwriters will not pay expenses for **Personal Injury**:

      a.      To any **Insured**;

b.      To a person hired to do work for or on behalf of any **Insured** or a tenant of the **Insured**;

c.      To a person injured on that part of the premises the **Named Insured** owns or rents that the person normally occupies;

d.      To a person, whether or not an Employee of any **Insured**, if benefits for the **Personal Injury** are payable or must be provided under a workers' compensation or disability benefits law or a similar law;

e.      To a person injured while taking part in athletics;

f.      Due to war, whether or not declared, or any act or condition incident to war.  War shall include civil war, insurrection, rebellion or revolution;

g.      Excluded under the Professional Liability Coverage; or

h.      To any prisoner.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
## NOT PURCHASED CLAUSE

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.

It is hereby noted that the Underwriters have made available coverage for **Claims**, **Claims Expense** and **Cleanup Costs** directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for **Claims**, **Claims Expense** or **Cleanup Costs** directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.


All other terms, exclusions and conditions of the policy remain unchanged.


(LMA 5219)

_____
Authorized Representative

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**AMEND SEXUAL/PHYSICAL MISCONDUCT EXCLUSION WITH SUBLIMIT**</u>

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that

1.   Item 3. of the Declarations is amended to include the following under the Professional Liability Coverage:

   $100,000        Sexual/Physical Misconduct Limit for Each **Claim**

   $300,000        Sexual/Physical Misconduct Annual Aggregate Limit

2.   The Underwriters' maximum aggregate limit of liability for all **Damages** and **Claims Expenses** resulting from all such **Claims** shall be as listed under paragraph 1. above which amount shall be part of and not in addition to the Aggregate Limit of Liability set forth in Item 3(b) of the Declarations.  One deductible amount, as shown in Item 4 of the Declarations shall apply to any one **Claim**.

3.   **Clause IV. EXCLUSIONS** 3.i. is deleted in its entirety and replaced with the following:

(i)   to any **Claim** arising out of or resulting from:

   (1)   any conduct, physical act, gesture, or spoken or written words of a sexual or physically violent nature by any **Insured**, including but not limited to, sexual intimacy (whether or not consensual), sexual molestation, sexual act, sexual contact, sexual advances, requests for sexual favors, sexual or physical assault or battery, sexual or physical abuse, sexual harassment or exploitation, or other verbal or physical conduct of a sexual nature; or

   (2)   the **Insured's** actual or alleged negligent employment, investigation, supervision, hiring, training or retention of any **Employee, Insured** or person for whom the **Insured** is legally responsible and whose conduct falls within paragraph (1), above.

However, this exclusion does not apply to:

   (3)   Any Specific Individual **Insured** who allegedly committed such misconduct, unless it is judicially determined that the Specific Individual **Insured** committed the misconduct.  If it is judicially determined that the Specific Individual **Insured** committed the misconduct, we will not pay **Damages**.

   (4)   Any other **Insured**, unless that **Insured**:

      (i)   knew or should have known about the  misconduct allegedly committed by the Specific Individual **Insured**, but failed to prevent or stop it; or

(ii)   knew or should have known that the Specific Individual **Insured** who allegedly committed the misconduct had a prior history of sexual or physical misconduct.

Underwriters will defend **Claims** alleging such acts until final civil or criminal adjudication, as the case may be.

As used in this exclusion, Specific Individual **Insured** includes employees and authorized volunteer workers while performing duties related to the conduct of the **Insured's** business.

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative

**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## ADDITIONAL NAMED INSUREDS SUBJECT TO RETROACTIVE DATE AND TERMINATION DATE

This endorsement modifies insurance provided under the following:

**Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance**

1.  In consideration of the premium charged for the Policy, it is hereby understood and agreed that:
    **Item 1.** of the Declarations is amended to include the following listed in column A. below:

| A. Additional Named Insureds: | B. Retroactive Date: | C. Termination Date: |
|---|---|---|
| 1. Last Resort Florida, LLC | 17 June 2013 | 01 January 2017 |

2.  Solely with respect to the Additional **Named Insured** listed in column A. above, the Retroactive Date in Item 6. of the Declarations is deleted in its entirety and replaced with the corresponding Retroactive Date in column B. above.

3.  Solely with respect to the Additional **Named Insured** listed in column A. above, coverage under this Policy shall only apply to **Claims** for any negligent act, error or omission, committed on or after the Retroactive Date set forth above in column B. and before the Termination Date set forth above in column C.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative



**Effective date of this Endorsement: 17-Jun-2017**
**This Endorsement is attached to and forms a part of Policy Number: W15F3F170401**
**Syndicate 2623/623 at Lloyd's. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## LLOYD'S SECURITY SCHEDULE

Syndicate 2623       82%
Syndicate 623        18%


ALL OTHER TERMS, conditions and limitations of said Certificate shall remain unchanged.



## MISCELLANEOUS MEDICAL PROFESSIONAL LIABILITY, GENERAL LIABILITY AND ADVERTISING LIABILITY CLAIMS MADE AND REPORTED INSURANCE

**NOTICE**: This is a Claims Made and Reported Policy. Except to such extent as may otherwise be provided herein, the coverage afforded under this insurance policy is limited to those **Claims** which are first made against the **Insured** and reported to the Underwriters during the **Policy Period**. -**Damages** and **Claims Expenses** shall be applied against the Deductible. Certain words and phrases which appear in bold type have special meaning; please refer to Section V., Definitions. -Please review the coverage afforded under this insurance policy carefully and discuss the coverage hereunder with your insurance agent or broker.

In consideration of the payment of premium and reliance upon the statements, representations and warranties made in the application which is made a part of this insurance policy (hereinafter referred to as the "Policy" or "insurance") and subject to the Limit of Liability, exclusions, conditions and other terms of this insurance, the Underwriters agree with the **Named Insured** (set forth in Item 1. of the Declarations, made a part hereof) as follows:

**I.     INSURING AGREEMENTS**

    A.     Coverage

        1.     Professional Liability

        The Underwriters will pay on behalf of the **Insured Damages** and **Claims Expenses** which the **Insured** shall become legally obligated to pay because of any **Claim** or **Claims** for **Bodily Injury** first made against any **Insured** during the **Policy Period** and reported to the Underwriters during the **Policy Period**, or any applicable **Extended Reporting Period**, arising out of any negligent act, error or omission of the **Insured** in rendering or failing to render **Professional Services** for others, on behalf of the **Named Insured** designated in Item 1. of the Declarations, except as excluded or limited by the terms, conditions and exclusions of this Policy.

        2.     General Liability and Advertising Liability

        The Underwriters will pay on behalf of the **Insured Damages** and **Claims Expenses** which the **Insured** shall become legally obligated to pay or assumed by the **Insured** under contract because of any **Claim** or **Claims** first made against any **Insured** during the **Policy Period** and reported to the Underwriters during the **Policy Period** or any applicable **Extended Reporting Period**, for **Personal Injury**, **Property Damage** or **Advertising Liability** caused by an **Accident**, except as excluded or limited by the terms, conditions and exclusions of this Policy.

    B.     Defense and Settlement

        1.     The Underwriters shall have the right and duty to defend the **Insured**, subject to the Limit of Liability, for any **Claim** first made against the **Insured** seeking payment under the terms of this insurance, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Underwriters shall choose

defense counsel in conjunction with the **Insured**, but in the event of a dispute, the decision of the Underwriters is final.

2.   It is agreed that the Limit of Liability available to pay **Damages** shall be reduced and may be completely exhausted by payment of **Claims Expenses**. **Damages** and **Claims Expenses** shall be applied against the Deductible set forth in Item 4. of the Declarations.

3.   The Underwriters shall have the right to make any investigation they deem necessary, including, without limitation, any investigation with respect to coverage and statements made in the application.

4.   If the **Insured** refuses to consent to any settlement or compromise recommended by the Underwriters and acceptable to the Claimant and elects to contest the **Claim**, the Underwriters' liability for any **Damages** and **Claims Expenses** shall not exceed the amount for which the **Claim** could have been settled, less the remaining Deductible, plus the **Claims Expenses** incurred up to the time of such refusal, or the applicable Limit of Liability, whichever is less, and the Underwriters shall have the right to withdraw from the defense of the **Claim** by tendering control of said defense to the **Insured**.

5.   Subject to the Limit of Liability of this Policy, the Underwriters shall pay all premiums on bonds to release attachments, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the **Insured** in any suit, all interest accruing after entry of judgment until Underwriters have paid, tendered or deposited in courts such part of such judgment as does not exceed the Underwriters' Limit of Liability.

6    Subject to the Limit of Liability of this Policy, the Underwriters shall reimburse the **Insured** for all reasonable expenses, other than loss of earnings, incurred at the Underwriters' request.

7.   The Underwriters shall not be obligated to pay any **Damages** or **Claims Expenses**, or to undertake or continue defense of any **Claim** after the applicable Limit of Liability has been exhausted by payment of **Damages** or **Claims Expenses** or after deposit of the remaining applicable Limit of Liability in a court of competent jurisdiction, and that upon such payment, the Underwriters shall have the right to withdraw from the further defense of the **Claim** by tendering control of said defense to the **Insured**.

## II.   PERSONS INSURED

Each of the following is an **Insured** under this insurance to the extent set forth below:

(a)   if the **Named Insured** designated in Item 1. of the Declarations is an individual, the person so designated but only with respect to the conduct of the business of which he or she is the sole proprietor, and the spouse of the **Named Insured** with respect to the conduct of such a business, and any **Employee** or volunteer worker while acting within the scope of his or her duties as such;

(b)   if the **Named Insured** designated in Item 1. of the Declarations is a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his or her liability as such and any **Employee** or volunteer worker while acting within the scope of his or her duties as such;

(c)   if the **Named Insured** designated in Item 1. of the Declarations is other than an individual, partnership or joint venture, the organization so designated and any executive officer, director, stockholder, **Employee**, employed medical director, administrator, volunteer worker, student, intern, or employed physician, surgeon, osteopath, dentist, orthodontist, chiropractor, podiatrist, psychiatrist, psychologist, nurse practitioner, physician assistant, CRNA, or midwife, thereof while acting within the scope of his or her duties as such; provided, however, that coverage is contingent on any such employed physician, surgeon, osteopath, dentist, orthodontist, chiropractor, podiatrist, psychiatrist, psychologist, nurse practitioner, physician assistant, CRNA, or midwife, being scheduled in Item 10. of the Declarations;

(d)   any person who previously qualified as an **Insured** under (a), (b) or (c) above prior to the termination of the required relationship with the **Named Insured**, but solely with respect to:

    (1)   **Professional Services** performed on behalf of the **Named Insured** designated in Item 1. of the Declarations, or

    (2)   an **Accident** arising solely out of the **Named Insured's** operations

    occurring prior to the termination of the required relationship with the **Named Insured**;

(e)   the estate, heirs, executor, administrators, assigns and legal representatives of any **Insured** in the event of the **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this Policy; and

(f)   any independent contractor, vendor and/or agent of the **Named Insured** scheduled in Item 10. of the Declarations as an **Insured**.

This Policy shall not apply:

(g)   to liability of an **Insured**, if an individual physician, surgeon, osteopath, dentist, orthodontist, chiropractor, podiatrist, psychiatrist, psychologist, nurse practitioner, physician assistant, CRNA, or midwife, for his or her personal acts, errors or omissions outside the scope of work conducted for, or on behalf of, the **Named Insured**; and

(h)   to any liability arising out of the conduct of any partnership or joint venture of which the **Insured** is a partner or member and which is not designated in this Policy as a **Named Insured**.

## III.   TERRITORY

This insurance applies to negligent acts, errors, omissions or **Accidents** which take place anywhere in the world, provided the **Claim** is first made against the **Insured** within the United States of America, its possessions and territories, or Puerto Rico.

## IV.    EXCLUSIONS

**1.    Exclusions applicable to Insuring Agreement I.A.1, Professional Liability**

The coverage under this Policy does not apply to **Damages** or **Claims Expenses** incurred with respect:

(a)    to any **Claim** arising out of **Personal Injury**, **Property Damage** or **Advertising Liability**, except with respect to **Bodily Injury** arising out of any negligent act, error or omission of any **Insured** in the rendering or failing to render **Professional Services**;

(b)    to any **Claim** arising out of any criminal, dishonest, fraudulent or malicious act, error or omission of any **Insured**, committed with actual criminal, dishonest, fraudulent or malicious purpose or intent. However, notwithstanding the foregoing, the insurance afforded by this Policy shall apply to **Claims Expenses** incurred in defending any such **Claim**, but shall not apply to any **Damages** which the **Insured** might become legally obligated to pay;

(c)    to any **Claim** arising out of or relating to any liability under any contract or agreement, whether written or oral, unless such liability would have attached to the **Insured** in the absence of such contract or agreement;

(d)    to any **Claim** based upon an express or implied warranty or guarantee, or breach of contract in respect of any agreement to perform work for a fee;

(e)    to any **Claim** arising out of any **Insured's** activities as a trustee, partner, officer, director or **Employee** of any trust, charitable organization, corporation, company or business other than that of the **Named Insured**;

(f)    to any **Claim** arising out of failure to pay any bond, interest on any bond, any debt, financial guarantee or debenture;

(g)    to any **Claim** arising out of any financial or investment advice given, referrals, warranties, guarantees or predictions of future performance made by any **Insured** as regards specific and identifiable investment items including but not limited to personal property, real property, stocks, bonds or securities;

(h)    to any **Claim** arising out of the actual or alleged publication or utterance of libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right to privacy;

(i)    to any **Claim** arising out of actual or alleged plagiarism, misappropriation of likeness, breach of confidence, or misappropriation or infringement of any intellectual property right, including patent, trademark, trade secret, trade dress and copyright.

**2. Exclusions applicable to Insuring Agreement I.A.2, General Liability and Advertising Liability**

The coverage under this Policy does not apply to **Damages** or **Claims Expenses** incurred with respect:

(a)      to any **Claim** arising out of the rendering of or failure to render **Professional Services** by any **Insured** or by any person or organization for whose acts or omissions the **Named Insured** is legally responsible;

(b)      to any **Claim** arising out of **Personal Injury** or **Property Damage** resulting from the use of force expected or intended from the standpoint of the **Insured**; provided, however, this exclusion shall not apply to reasonable use of force by the **Insured**;

(c)      to any **Claim** for liability arising out of **Personal Injury** or **Property Damage** arising out of ownership, maintenance, operation, use, loading or unloading of:

         (1)      any **Automobile**, Aircraft or Watercraft owned or operated by or rented or loaned to any **Insured**; or

         (2)      any other **Automobile**, Aircraft or Watercraft operated by any person in the course of his or her employment or volunteer duties for any **Insured**;

(d)      to any **Claim** arising out of **Personal Injury** or **Property Damage** arising out of:

         (1)      the ownership, maintenance, operation, use, loading or unloading of any **Mobile Equipment** while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for such contest or activity; or

         (2)      the operation or use of any snowmobile, moped or motorized bicycle, or trailer designed for use therewith;

(e)      to any **Claim** for **Personal Injury** or **Property Damage** arising out of and in the course of the transportation of **Mobile Equipment** by any **Automobile** owned or operated by or rented or loaned to any **Insured**;

(f)      to any **Claim** arising out of **Personal Injury**, **Property Damage** or **Advertising Liability** for which the **Insured** or his or her indemnitee may be held liable:

         (1)      as a person or organization engaged in the business of manufacturing, distributing, selling, or serving alcoholic beverages; or

         (2)      if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage;

(g)      to any **Claim** arising out of **Personal Injury** to:

(1)    any **Employee** or volunteer of the **Named Insured** arising out of and in the course of his employment or retention by the **Named Insured**; or

(2)    the spouse, child, parent, brother or sister of the **Employee** as a consequence of above.  This exclusion applies:

    (i)    whether the **Insured** may be liable as an employer or in any other capacity; and

    (ii)    to any obligation to share **Damages** with or repay someone else who must pay **Damages** arising out of such liability;

(h)    to any **Claim** arising out of **Property Damage to**:

(1)    property owned or occupied or rented to the **Insured**;

(2)    property used by the **Insured**; or

(3)    property in the care, custody or control of the **Insured** or as to which the **Insured** is for any purpose exercising physical control;

(i)    to any **Claim** arising out of **Property Damage** to premises owned or alienated by the **Named Insured** arising out of such premises or any part thereof;

(j)    to any **Claim** arising out of loss of use of tangible property which has not been physically injured or destroyed resulting from:

(1)    a delay in or lack of performance by or on behalf of the **Named Insured** of any contract or agreement; or

(2)    the failure of the **Named Insured's Products** or work performed by or on behalf of the **Named Insured** to meet the level of performance, quality, fitness or durability warranted or represented by the **Named Insured**;

but this Exclusion does not apply to loss of use of the other tangible property resulting from the sudden and accidental injury to or destruction of the **Named Insured's Products** or work performed by or on behalf pf the **Named Insured** after such products or work have been put to use by any person or organization other than the **Insured**;

(k)    to any **Claim** arising out of **Property Damage** to the **Named Insured's Products**, or for the cost of inspecting, repairing or replacing any defective or allegedly defective product or part thereof or for loss of use of any defective or allegedly defective product;

(l)    to any **Claim** arising out of **Property Damage** to work performed by or on behalf of the **Named Insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(m)     to any **Claim** arising out of the withdrawal, recall, inspection, repair, replacement or loss of use of the **Named Insured's Products** or work completed by or for the **Named Insured** or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(n)     to any **Claim** relating to **Advertising Liability** arising out of:

    (1)     failure of performance of contract; provided, however, that this Exclusion shall not apply to the unauthorized appropriation of ideas based upon alleged breach of an implied contract;

    (2)     infringement of patent, trademark, service mark, and trade name, other than titles or slogans by use thereof on or in connection with goods, products or services sold, offered for sale or advertised; or

    (3)     incorrect description or mistake in advertised price of goods, products or services sold, offered for sale or advertised.

**3. Exclusions applicable to both Insuring Agreements I.A.1., and I.A.2., Professional Liability and General Liability and Advertising Liability**

The coverage under this Policy does not apply to **Damages** or **Claims Expenses** incurred with respect:

(a)     to any **Claim** made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in the Declarations, which is owned by any **Insured** or in which any **Insured** is a trustee, partner, officer, director or **Employee**;

(b)     to any **Claim** arising out of the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto;

(c)     to any **Claim** or circumstance which might lead to a **Claim** in respect of which any **Insured** has given notice to any insurer of any other policy or self-Insurance in force prior to the effective date of this Policy;

(d)     to any **Claim** or circumstance which might lead to a **Claim** known to any **Insured** prior to the inception of this Policy and not disclosed to the Underwriters at inception;

(e)     to any **Claim** or circumstance that might lead to a **Claim** arising out of any negligent act, error or omission or **Accident** which first took place, or is alleged to have taken place, prior to the Retroactive Date as set forth in Item 6 of the Declarations;

(f)     to any **Claim** arising out of discrimination including but not limited to discriminatory employment practices, allegations of actual or alleged violations of civil rights or acts of discrimination based entirely or in part on the race, gender, pregnancy, national origin, religion, age or sexual orientation;

(g)     to any **Claim** directly or indirectly arising out of:

    (1)     the actual, alleged or threatened discharge, dispersal, release or escape or failure to detect the presence of **Pollutants**, provided that this Exclusion shall not apply to: (i) **Personal Injury** sustained by any patient, visitor or invitee; and (ii) **Personal Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**;

    (2)     the manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to or testing for **Pollutants** contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever; or

    (3)     any governmental or regulatory directive or request that the **Insured** or anyone acting under its direction or control to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize said **Pollutants**;

(h)     to any **Claim** arising out of the insolvency or bankruptcy of any **Insured** or of any other entity including but not limited to the failure, inability, or unwillingness to pay **Claims**, losses or benefits due to the insolvency, liquidation or bankruptcy of any such individual entity;

(i)     to any **Claim** arising out of or resulting from:

    (1)     any conduct, physical act, gesture, or spoken or written words of a sexual or physically violent nature by any **Insured**, including but not limited to, sexual intimacy (whether or not consensual), sexual molestation, sexual or physical assault or battery, sexual or physical abuse, sexual harassment or exploitation; or

    (2)     the **Insured's** actual or alleged negligent employment, investigation, supervision, hiring, training or retention of any **Employee, Insured** or person for whom the **Insured** is legally responsible and whose conduct falls within paragraph (1), above.

(j)     to any **Claim** for punitive or exemplary **Damages**, or **Damages** which are a multiple of compensatory **Damages**, fines, sanctions, taxes or penalties, or the return of or reimbursement for fees, costs or expenses charged by any **Insured**;

(k)     to any **Claim** arising out of **Personal Injury** to any **Employee** or volunteer worker of the **Insured** arising out of and in the course of his employment by the **Insured**, or under any obligation for which the **Insured** or any carrier as his insurer may be liable, under any Workers' Compensation, Unemployment Compensation, Disability Benefits Law or under any similar law;

(l)     to any **Claim** based upon or arising out of a violation or alleged violation of the Securities Act of 1933 as amended, or the Securities Exchange Act of 1934 as amended, or any State Blue Sky or securities law or similar state of Federal statute and any regulation or order issued pursuant to any of the foregoing statutes;

(m)    to any **Claim** or actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 et seq., and any amendments thereto, or any rules or regulations promulgated thereunder;

(n)    to any **Claim** arising from costs of complying with physical modifications to any premises or any changes to the **Insured's** usual business operations mandated by the Americans with Disabilities Act of 1990, including any amendments, or similar federal, state or local law;

(o)    to any **Claim** caused directly or indirectly, in whole or in part, by:

    (1)    any fungus(es) or spore(s);

    (2)    any substance, vapour or gas produced by or arising out of any fungus(es) or spore(s);

    (3)    any materials, product, building component, building or structure that contains, harbours, nurtures or acts as a medium for any fungus(es) or spore(s);

    (4)    any materials, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any fungus(es) or spore(s);

    (5)    the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungus(es), molds, spore(s) or mycotoxins of any kind;

    (6)    any action taken by any party in response to the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungus(es), molds, spores or mycotoxins of any kind, such action to include investigating, testing for, detection of, monitoring of, treating, remediating or removing such fungus(es), molds, spore(s) or mycotoxins; or

    (7)    any governmental or regulatory order, requirement, directive, mandate or decree that any party take action in response to the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungus(es), molds, spores or mycotoxins of any kind.

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that injury or **Damages**.

For the purposes of this Exclusion, the following Definitions are added:

"Fungus(es)" includes, but is not limited to, any form of mold, mushroom or mildew.

"Spore(s)" mean any reproductive body produced by or arising out of any fungus(es).

This Exclusion shall not apply to **Claims** arising from medical research activities that would otherwise be covered hereunder or to any **Damages** and **Claims Expenses** which the **Insured** shall become legally obligated to pay in rendering or failing to render **Professional Services** as stated in Item 11. of the Declarations;

(p)    to any **Claim** based upon or arising out of any action or proceeding brought by or on behalf of any federal, state or local governmental, regulatory or administrative agency, regardless of the name in which such action or proceeding is brought, including, but not limited to, the Health Insurance Portability and Accountability Act of 1996, the Social Security Act, 42 U.S.C. §1320a, et. seq., or similar state or federal statute, regulation or executive order promulgated thereunder;

(q)    to any **Claim** based upon or arising out of any **Insured's** data processing, including:

    (1)    conversion of data from source material into media for processing on the **Insured's** electronic data processing system;

    (2)    processing of data by the **Insured** on the **Insured's** electronic data processing system;

    (3)    design or formulation of an electronic data processing program or system;

    (4)    any liability arising from:

        (i)    the failure of any program, instruction or data for use in any computer or other electronic processing device, equipment or system to function in the manner expected or intended;

        (ii)    the transmission or receipt of any virus, program or code that causes loss or damages to any computer system and /or prevents or impairs its proper function or performance;

        (iii)    unauthorized access to any computer system;

        (iv)    the functioning, non-functioning, improperly functioning, availability or unavailability of:

            (a)  the internet or similar facility; or

            (b)  any intranet or private network or similar facility; or

            (c)  any website, bulletin board, chat room, search engine, portal or similar third party application service;

        (v)    the alteration, corruption, destruction, distortion, erasure, theft or other loss of or damage to data, software, information repository, microchip, integrated system or similar device in any computer equipment or non-computer equipment or any kind of programming or instruction set;

(vi)    any loss of use or functionality, whether partial or entire, of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic and any ensuing inability or failure of any insured to conduct business;

(vii)   any alteration, breach, corruption, destruction, or failure of any computer, network systems or firewalls;

(viii)  theft, loss, or unauthorized disclosure or access to personally identifiable information including non-public personal information, medical or healthcare information (including protected health information) in the care, custody or control of the **Insured** or a third party for whose such unauthorized disclosure or access the **Insured** is legally liable, or violation of a privacy law protecting such information, including any consequential liability (including any failure to comply with any legislation requiring monitoring or notification to any person affected by any of the above, or in respect of any related regulatory proceeding or investigation); or

(ix)   theft, loss, or unauthorized disclosure or access to information emanating from a third party that the **Insured** is required by agreement to maintain confidential;

(r)    to any **Claim** for **Personal Injury**, **Property Damage** or **Advertising Liability** based upon or arising out of the **Named Insured's Products**;

(s)    to any **Claim** based upon the manufacture, handling, sale or distribution of Phenylpropanolamine, Phenylpropanolamine Hydrochloride, PPA or any product or drug containing any of these substances;

(t)    to any **Claim** based on the willful non-compliance of any **Insured** with any Food and Drug Administration (FDA) rules, regulations, and statutes found at Food and Drugs, 21 C.F.R. Chapter 1 § 1.1 to § 1299, as amended and revised, or treating a patient with any drugs, medical devices, biologics or radiation-emitting products that have been disapproved or not yet approved by the FDA;

(u)    to any **Claim** based upon or arising out of any **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;

(v)    to any **Claim** against any subsidiary designated in the Declarations or its past, present, or future **Employees**, directors, officers, trustees, review board or committee members, or volunteers acting in his or her capacity as such, which are based upon, arise out of, directly or indirectly result from, are in consequence of, or in any way involve any fact, circumstance, situation, transaction, event, **Accident**, or negligent acts, errors or omissions or series of facts, circumstances, situations, transactions, events, **Accidents** or negligent acts, errors or omissions happening before the date such entity became a subsidiary;

(w)    to any **Claim** arising directly out of, or resulting from or in consequence of, or in any way involving:

(1)    asbestos or any materials containing asbestos in whatever form or quantity;

(2)    the actual, potential, alleged or threatened presence, release or dispersal of any asbestos;

(3)    any action taken by any party in response to the actual, potential or threatened presence, release or dispersal of any asbestos particles of any kind, such action to include investigating, testing for, detection of, monitoring of, treating, remediating or removing such materials containing asbestos;

(4)    any governmental or regulatory order, requirement, directive, mandate or decree that any party take action in response to the actual, potential, alleged or threatened presence, release or dispersal of any asbestos containing particles of any kind;

(5)    any product, substance or waste which contains lead;

(6)    inhaling, ingesting or physical exposure to silica directly or through any goods, products, structures, real estate or land containing silica;

(7)    the use or presence of silica in any process or operation of any type, including but not limited to construction, manufacturing, sandblasting, cleaning, drilling, farming or mining;

(8)    the use or presence of silica in any goods, products, structures, real estate or land, or any component part of any good, product, structures, real estate or land containing silica;

(9)    the manufacture, sale, transportation, handling, storage, or disposal of silica or any goods, products, structures, real estate or land containing silica;

(10)   disease actually or allegedly caused by, contributed to or aggravated by silica, including but not limited to silicosis, chronic silicosis, accelerated silicosis, acute silicosis, conglomerate silicosis, any auto-immune disorder, tuberculosis, silicoproteinosis; cancer, scleroderma, emphysema, pneumoconiosis, pulmonary fibrosis, progressive massive fibrosis, any lung disease or any other ailment actually or allegedly caused by, contributed to or aggravated by silica;

(11)   any costs of medical or other testing, monitoring or diagnosis arising from or related to any actual, alleged, threatened or feared disease or injury, including any emotional or mental distress, arising in whole or in part, directly or indirectly, out of silica; or

(12)   any cost of investigations, feasibility studies, cleaning, removal or remediation of the actual or alleged presence of silica in or on any goods, products, structures, real estate or land;

For the purposes of this Exclusion, "silica" means any silica in the form of and any of its derivatives, including but not limited to silica dust, silicon dioxide (SiO2), crystalline silica, quartz, or non-crystalline (amorphous silica);

(x)    to any **Claim** associated with implementation of any compliance program or any policies, procedures or practices relating to participation as a provider of medical

services to a managed care organization or under a healthcare benefit program, whether initiated voluntarily or pursuant to direction by, order of, or in settlement with a government body, hospital, healthcare facility or managed care organization;

(y)    to any **Claim** based upon or arising out of any actual or alleged violation of any federal, state, or local anti-trust, restraint of trade, unfair competition, or price fixing law, unfair or deceptive trade practices, or consumer protection any rules or regulations promulgated thereunder; to the extent a **Claim** alleges both professional negligence and any of the above excluded enumerated offenses, Underwriters and the **Insured** will use their best efforts to reach a fair allocation between covered and uncovered **Damages**;

(z)    to any **Claim** based upon, arising out of, resulting from, any actual or alleged: (1) failure to obtain, effect, or maintain any form, policy, plan or program of insurance, stop loss or provider excess coverage, reinsurance, self-insurance, suretyship, or bond; (2) commingling, mishandling of or liability to pay, collect or safeguard funds; or (3) failure to collect or pay premiums, commissions, brokerage charges, fees or taxes;

(aa)    to any **Claim** for **Personal Injury**, **Property Damage or Advertising Liability** due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(ab)    to any **Claim** arising out of or relating to any loss, damage, or cost or expense of whatsoever nature directly or indirectly caused by, resulting from happening through, arising out of or in connection with any act of terrorism, regardless of any other cause contributing concurrently or in any other sequence to the loss, damage, cost or expense.

For the purpose of this Exclusion, terrorism means an act or threat of violence or an act harmful to human life, tangible or intangible property or infrastructure with the intention or effect to influence any government or to put the public or any section of the public in fear.  In any action, suit or other proceedings where the Underwriters allege that by reason of this Exclusion, a loss, damage, cost or expense in not covered by this Policy, the burden of proving that such loss, damage, cost or expense is covered shall be upon the **Insured**.

In the event any portion of this Exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect;

(ac)    to any **Claim** brought against any **Insured** by any other **Insured** hereunder;

(ad)    to any **Claim** arising out of or resulting from the distribution of unsolicited email, direct mail or facsimiles, or telemarketing;

(ae)    to any **Claim** arising out of or resulting from any action or omission that violates or is alleged to violate:

(1)    the Telephone Consumer Protection Act (TCPA);

(2)     the CAN-SPAM Act of 2003;

(3)     the Fair Credit Reporting Act; or

(4)     any statute, ordinance or regulation, other than TCPA, CAN-SPAM Act of 2003 or the Fair Credit Reporting Act, that prohibits or limits the sending, transmitting, communicating or distribution of material or information;

(af)   to any **Claim** arising out of or resulting from the existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that actually or allegedly affects the health, safety or condition of any person, or the environment, or that affects the value, marketability, condition or size of any property, provided this Exclusion shall not apply to any patient receiving **Professional Services**.

## V.     DEFINITIONS

Wherever used in this Policy, the bolded terms have the meaning provided:

(a)     **"Accident"** means an event or happening, including continuous or repeated exposure to substantially the same general harmful conditions, which involves one or more persons or entities, and which results in **Personal Injury**, **Property Damage** or **Advertising Liability** to such persons or entities.

(b)     **"Advertising Liability"** means injury arising out of one or more of the following, committed in the course of the **Insured's** advertising activities:

(1)     libel, slander or defamation;

(2)     infringement of copyright, title slogan, trade dress, or advertising idea;

(3)     piracy or idea misappropriation under an implied contract; or

(4)     invasion of right of privacy, subject always to Exclusion IV.3.q.

(c)     "**Automobile**" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include **Mobile Equipment**, as hereinafter defined.

(d)     **"Bodily Injury"** means physical injury (including death at any time resulting therefrom), mental injury, mental illness, mental anguish, humiliation, emotional upset, shock, sickness, disease or disability.

(e)     "**Claim**" means a written notice received by any **Insured** of an intention to hold the **Insured** responsible for compensation for **Damages**, including the service of suit or institution of arbitration proceedings against the **Insured**.

(f)     "**Claims Expenses**" means:

(1)    reasonable and customary fees charged by an attorney(s) designated and agreed by the Underwriters in consultation with the **Insured**, but subject always to the Underwriters' final decision; and

(2)    all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if incurred by the Underwriters, or by the **Insured** with the written consent of the Underwriters.

**Claims Expenses** does not include any salary, overhead or other charges by the **Insured** for any time spent in co-operating in the defense and investigation of any **Claim** or circumstance which might lead to a **Claim** notified under this insurance.

(g)    "**Damages**" means a civil monetary judgment, award or settlement and does not include:

(1)    the restitution of compensation and expenses paid to the **Insured** for services and goods; and

(2)    judgments or awards deemed uninsurable by law.

(h)    "**Employee**" means a person on the **Insured**'s regular payroll, with federal and, if applicable, state taxes withheld, whose work is directed or controlled by the **Insured**, including part-time and seasonal **Employees** and leased workers. **Employee** does not include a temporary worker.

(i)    "**Extended Reporting Period**", if applicable, means the period of time after the end of the **Policy Period** for reporting **Claims**, arising out of negligent acts, errors or omissions or **Accidents** which take place prior to the end of the **Policy Period** but subsequent to the Retroactive Date identified in Item 6 of the Declarations.

    "**Hostile Fire**" means a fire which becomes uncontrollable or breaks out from where it was intended to be.

(k)    "**Mobile Equipment**" means a land vehicle (including any attached machinery or apparatus) whether or not self-propelled:

(1)    not subject to motor vehicle registration;

(2)    maintained for use exclusively on premises owned by or rented to the **Named Insured**, including the ways immediately adjoining;

(3)    designed for use principally off public roads; or

(4)    designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle:

      (i)  power cranes, shovels, loaders, diggers and drills;

      (ii) concrete mixers (other than the mix-in-transit type), graders, scrapers, rollers and on the road construction or repair equipment;

      (iii) air-compressors, pumps and generators including spraying, welding and building cleaning equipment; or

      (iv) geophysical exploration and well servicing equipment.

(l)    **"Named Insured"** means the entity or person identified in Item 1. of the Declarations.

(m)   "**Named Insured's Products**" means goods or products manufactured, sold, handled or distributed by the **Named Insured** or by others trading under its name, including any container thereof (other than a vehicle) but shall not include a vending machine or any property, other than such container rented to or located for use of others but not sold.

(n)    **"Personal Injury"** means:

      (1)    **Bodily Injury**;

      (2)    false arrest, false imprisonment, wrongful eviction, detention or malicious prosecution;

      (3)    libel, slander, defamation of character or invasion of right of privacy, unless arising out any advertising activities; or

      (4)    wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

(o)    **"Policy Period"** means the period of time between the inception date and the effective date of termination, expiration or cancellation of this insurance shown in Item 2. of the Declarations and specifically excludes any **Extended Reporting Period**.

(p)    "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to asbestos and/or lead (or products containing asbestos and/or lead whether or not the asbestos and/or lead is or was at any time airborne as a fibre or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever), smoke, vapour, soot fumes, acids, alkalis, toxic chemicals and waste (waste includes materials to be recycled, reconditioned or reclaimed).

(q)    "**Professional Services**" means those professional services specifically identified in Item 11. of the Declarations.

(r)    "**Property Damage**" means:

(1)     physical injury to or destruction of tangible property, including consequential loss of use thereof; or

(2)     loss of use of tangible property which has not been physically injured or destroyed.

## VI.    LIMIT OF LIABILITY

A.    The Limit of Liability stated in Item 3(a) of the Declarations as "Each **Claim**" is the Underwriters' Limit of Liability for all **Damages** and **Claims Expenses** arising out of the same, related or continuing negligent acts, errors or omissions, or arising out of the same or related or continuing **Accidents** without regard to the number of **Insureds**, **Claims** or claimants. All **Claims** arising out of the same, related or continuing negligent acts, errors or omissions, or arising out of the same, related or continuing **Accidents** shall be deemed to be a single **Claim**.

B.    The Limit of Liability stated in Item 3(b) of the Declarations as "Term Aggregate" is the Underwriters' Limit of Liability for all **Damages** and **Claims Expenses** arising out of all **Claims** which are covered under the terms and conditions of this Policy.

C.    The Limit of Liability for any **Extended Reporting Period** shall be part of, and not in addition to, the Underwriters' Limit of Liability for the **Policy Period**.

## VII.    DEDUCTIBLE

The Deductible amount stated in Item 4. of the Declarations shall be satisfied by payments by the **Insured** of **Damages** and/or **Claims Expenses** resulting from each **Claim** first made and reported to the Underwriters during the **Policy Period** and/or any applicable **Extended Reporting Period** as a condition precedent to the payment by the Underwriters of any amounts due hereunder. The Underwriters shall be liable only for the amounts in excess of such Deductible subject to the Underwriters' Limit of Liability in Item 3. of the Declarations. The Deductible is in addition to the Underwriters' Limit of Liability and not part thereof. The **Insured** shall make direct payments within the Deductible to appropriate parties designated by the Underwriters. The Deductible is to be uninsured, unless otherwise agreed to by the Underwriters. Under no circumstances shall Underwriters be called upon to pay the Deductible, but the Underwriters may do so at their sole discretion. Such payment shall in no way affect the Underwriters' ability to collect the Deductible from the **Insured**. The existence of "other insurance" shall not affect or abrogate the obligation of the **Insured** to pay the Deductible as required.

## VIII.    INNOCENT INSURED

Whenever coverage under this insurance would be excluded, suspended or lost:

A.    because of Exclusion IV 1. (b) or Exclusion IV 2. (b) relating to intentional, criminal, dishonest, fraudulent or malicious acts, errors or omissions by any **Insured**, and with respect to which any other **Insured** did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof; or

B.  because of non-compliance with any condition relating to the giving of notice to the Underwriters with respect to which any other **Insured** shall be in default solely because of the failure to give such notice or concealment of such failure by one or more **Insureds** responsible for the loss or damage otherwise covered hereunder;

the Underwriters agree that such insurance as would otherwise be afforded under this Policy shall be paid with respect to those **Insureds** who did not personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of (a) one or more of the acts, errors or omissions described in any such exclusion; or (b) such failure to give notice, provided that the condition be one with which such **Insured** can comply, and after receiving knowledge thereof, the **Insured** entitled to the benefit of Section VIII. shall comply with such condition promptly after obtaining knowledge of the failure of any other **Insured** to comply therewith.

With respect to this provision, the Underwriters' obligation to pay in such event shall be in excess of the full extent of any assets of any **Insured** to whom the exclusion applies and shall be subject to the terms, conditions and limitations of this Policy.

## IX.  EXTENDED REPORTING PERIOD

A.  In the event of cancellation or non-renewal of this insurance, the **Named Insured** designated in Item 1. of the Declarations shall have the right to an **Extended Reporting Period** identified in Item 5. of the Declarations for **Claims** first made against any **Insured** and reported to the Underwriters during the **Extended Reporting Period**, subject to the conditions set forth in the definition of **Extended Reporting Period** herein.  In order for the **Named Insured** to invoke the **Extended Reporting Period** option, the payment of the additional premium set forth in Item 5(b) of the declarations for the **Extended Reporting Period** must be paid to the Underwriters within 30 days of the non-renewal or cancellation.

B.  The Limit of Liability for the **Extended Reporting Period** shall be part of, and not in addition to, the Underwriters' Limit of Liability for the **Policy Period**.

C.  The quotation by the Underwriters of a different premium or Deductible or Limit of Liability or changes in Policy language for the purpose of renewal shall not constitute a refusal to renew by the Underwriters.

D.  The right to the **Extended Reporting Period** shall not be available to the **Named Insured** where cancellation or non-renewal by the Underwriters is due to non-payment of premium or failure of an **Insured** to pay such amounts in excess of the applicable Limit of Liability or within the applicable Deductible.

E.  All notices and premium payments with respect to the **Extended Reporting Period** shall be directed to the Underwriters through the entity named in Item 8. of the Declarations.

F.  At the commencement of the **Extended Reporting Period**, the entire premium shall be deemed earned, and in the event the **Named Insured** terminates the **Extended Reporting Period** for any reason prior to its natural expiration, the

Underwriters will not be liable to return any premium paid for the **Extended Reporting Period**.

## X.    OTHER INSURANCE

This insurance shall apply in excess of any other valid and collectible insurance or self-insurance available to any **Insured**, unless such other insurance is written only as specific excess insurance over the Limit of Liability of this Policy.

## XI.    NOTICE OF CLAIM, OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM

A.    If any **Claim** is made against the **Insured**, the **Insured** shall forward as soon as practicable to the Underwriters through persons named in Item 9. of the Declarations written notice of such **Claim** and forward every demand, notice, summons or other process received by the **Insured** or its representative. In no event shall the Underwriters be given notice of a **Claim** later than the end of the **Policy Period**, the end of the purchased **Extended Reporting Period**, or thirty (30) days after the expiration date of the **Policy Period** in the case of **Claims** first made against the Insured during the last thirty (30) days of the **Policy Period**. The **Insured's** duty to provide notice in accordance with this provision is a condition precedent to coverage.

B.    If during the **Policy Period** the **Insured** first becomes aware of a negligent act, error or omission or an **Accident** that could lead to a **Claim**, it must give written notice to the Underwriters through persons named in Item 9. of the Declarations during the **Policy Period** of:

(1)    the specific, negligent act, error, or omission, or **Accident**;

(2)    the injury or damage which may result or has resulted from the negligent act, error, or omission or **Accident**; and

(3)    the circumstances by which the **Insured** first became aware of the negligent act, error or omission or **Accident**.

Any subsequent **Claim** made against the **Insured** which is the subject of the written notice shall be deemed to have been made at the time written notice was first given to the Underwriters.

C    A **Claim** or circumstance that might lead to a **Claim** shall be considered to be reported to the Underwriters when notice is received by the Underwriters through persons named in Item 9. of the Declarations.

D.    All **Claims** arising out of the same, continuing or related negligent act, error or omission or arising out of the same, continuous or related **Accident** shall be considered a single **Claim** and deemed to have been made at the time the first of the related **Claims** is reported to the Underwriters. Such related **Claims** shall be subject to one Limit of Liability identified in Item 3(a) of the Declarations.

E.    In the event of non-renewal of this insurance by the Underwriters, the **Insured** shall have thirty (30) days from the expiration date of the **Policy Period** to notify

the Underwriters of **Claims** made against the **Insured** during the **Policy Period** which arise out of any negligent act, error or omission or **Accident** occurring prior to the termination date of the **Policy Period** and otherwise covered by this insurance.

F.     If any **Insured** shall make any **Claim** under this Policy knowing such **Claim** to be false or fraudulent, as regards amount or otherwise, this Policy shall become null and void and all coverage hereunder shall be forfeited.

## XII.   ASSISTANCE AND CO-OPERATION OF THE INSURED

The **Insured** shall co-operate with the Underwriters in all investigations, including regarding the application and coverage under this Policy, and upon the Underwriters' request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization other than an **Employee** of any **Insured** who may be liable to the **Insured** because of negligent acts, errors or omissions or **Accidents** with respect to which insurance is afforded under this Policy. The **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The **Insured** shall not, except at its own cost, admit liability, make any payment, assume any obligation, incur any expense, enter into any settlement, stipulate to any judgment or award or otherwise dispose of any **Claim** without the consent of the Underwriters.

## XIII.   ACTION AGAINST THE UNDERWRITERS

No action shall lie against the Underwriters unless, as a condition precedent thereto, there has been full compliance with all terms of this insurance, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment or award against the **Insured** after actual trial or arbitration or by written agreement of the **Insured**, the claimant and the Underwriters. No person or organization shall have any right under this insurance to join the Underwriters as a party to an action or other proceeding against the **Insured** to determine the **Insured's** liability, nor shall the Underwriters be impleaded by the **Insured** or its legal representative.

## XIV.   BANKRUPTCY

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Underwriters of their obligations hereunder.

## XV.   SUBROGATION

In the event of any payment under this insurance, the Underwriters shall be subrogated to all the **Insured's** rights of recovery against any person or organization, and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing before or after the payment of **Damages** by the Underwriters to prejudice such rights.

## XVI.   CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this insurance or estop the Underwriters

from asserting any right under the terms of this insurance; nor shall the terms of this insurance be waived or changed, except by endorsement issued to form a part of this insurance, signed by the Underwriters.

XVII.   **MERGERS AND ACQUISITIONS**

A.   If during the **Policy Period,** the **Named Insured** mergers or acquires an entity and

(1)   the revenues of the merged or acquired entity do not exceed 10% of the **Named Insured's** annual revenues as set forth in its most recent application for insurance;

(2)   the business operations of the merged or acquired entity are of a similar nature to those of the **Named Insured** as set forth in its most recent application for insurance; and

(3)   the merged or acquired entity is located in the same state as the **Named Insured** or any subsidiary,

then this Policy will automatically cover the merged or acquired entity, subject to the policy terms, conditions and limitations, from the date such merger or acquisition becomes final but only for negligent acts, errors or omissions or **Accidents** that take place subsequent to the merger or acquisition. In the event the total amount of revenues of all merged and acquired entities during the **Policy Period** exceed 10% of the **Named Insured's** annual revenues as set forth in its most recent application for insurance, the above provision shall no longer apply and any further mergers or acquisitions will be subject to Paragraph B., below.

B.   In the event during the **Policy Period** the **Named Insured** mergers or acquires an entity that does not fall within the criteria detailed in Paragraph A. above, or where Paragraph A. above no longer applies by virtue of the provision contained in the last sentence of Paragraph A. above, then the **Named Insured** shall be required to give written notice to the Underwriters prior to the completion of a merger or acquisition of the **Named Insured**, and the Underwriters expressly reserve the right to request additional premium and/or to apply amended terms and conditions if this insurance is to remain in force subsequent to any merger or acquisition.

XVIII.  **ASSIGNMENT**

The interest hereunder of any **Insured** is not assignable. If the **Insured** shall die or be adjudged incompetent, this insurance shall cover the **Insured's** legal representative as the **Insured,** as would be permitted by this Policy.

XIX.   **CANCELLATION**

This Policy may be cancelled by the **Named Insured** or by the Underwriters by sending registered or certified mail notice to the other party stating when, not less than 60 days

thereafter, cancellation shall be effective. However in the event of non-payment of premium by the **Named Insured**, this Policy may be cancelled by the Underwriters by sending registered or certified mail notice to the **Named Insured** stating when, not less than ten days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by the Underwriters shall be sufficient proof of notice, and the insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the **Named Insured** or by the Underwriters shall be equivalent to mailing.

In the event this Policy is cancelled, as aforesaid, the expiration date of this Policy shall be the effective date of such cancellation.

If this Policy shall be cancelled by the **Named Insured**, the Underwriters shall retain the short rate proportion of the premium for the period this Policy has been in force, calculated in accordance with the Short Rate Cancellation Table on file with the Underwriters. If this Policy shall be cancelled by the Underwriters, the Underwriters shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Underwriters shall be effective even though the Underwriters make no payment or tender of return premium with such notice.

## XX.    SINGULAR FORM OF A WORD

Whenever the singular form of a word issued, herein, the same shall include the plural when required by context.

## XXI.    ENTIRE CONTRACT

By acceptance of this Policy, the **Insured** agrees that the statements in the Declarations and application are his or her agreements and representations, that this insurance is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the **Insured** and the Underwriters relating to this insurance.

## XXII.    NUCLEAR INCIDENT EXCLUSION

The insurance provided by this Policy does not apply:

A.    To injury sickness, disease, death or destruction

    (1)    with respect to which an **Insured** under this Policy of insurance is also an **Insured** under a nuclear energy liability insurance issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or would be an **Insured** under any such insurance but for its termination upon exhaustion of its limits of liability; or

    (2)    resulting from the hazardous properties of nuclear material and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the **Insured** is, or had this insurance not been issued would be, entitled to indemnity from the United States of

America, or any agency thereof under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

A.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

B.    To injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (1)    the nuclear material (i) is at any nuclear facility owned by, or operated by or on behalf of, an **Insured** or (ii) has been discharged or dispersed there from;

    (2)    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

    (3)    the injury, sickness, disease, death or destruction arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury to or destruction of property at such nuclear facility.

C.    As used in this Section: "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof, "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (i) containing by-product material and (ii) resulting from the operation by any person or organization of any nuclear facility under paragraph (1) or (2) thereof; "nuclear facility" means

    (1)    any nuclear reactor;

    (2)    any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging waste;

    (3)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if any time the total amount of such material in the custody of the **Insured** at the premises were such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 of any combination thereof, or more than 250 grams of uranium 235; or

(4)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms or radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this Section is subject to the terms, exclusions, conditions and limitations of the insurance to which it is attached.

## XXIII.  SERVICE OF SUIT

A.   It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due under this insurance, the Underwriters hereon, at the request of the **Named Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  This Condition does not constitute and should not be understood to constitute an agreement by the Underwriters that an action is properly maintained in a specific forum, nor may it be construed as a waiver of the Underwriters' rights to commence an action in a court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state of the United States, all of which rights the Underwriters expressly reserve.  It is further agreed that service of process in such suit may be made upon the designated entity in Item 7. of the Declarations, and that in any suit instituted against any one of them upon this contract, the Underwriters will abide by the final decision of such court in the event of an appeal.

B.   The Entity designated in Item 7. of the Declarations is authorized and directed to accept service of process on behalf of the Underwriters in any such suit and/or upon the request of the **Named Insured** to give written undertaking to the **Named Insured** that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as his or her true and lawful attorney upon whom may be served any lawful process in any action, suit or proceedings instituted by or on behalf of the **Named Insured** or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the Entity, designated in Item 7. of the Declarations, as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## XXIV.  CHOICE OF LAW

Any dispute involving this Policy shall be resolved by applying the law of the state designated in Item 12. the Declarations.

## XXV.   SEVERAL LIABILITY

The subscribing Underwriters' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of his or her individual subscriptions. The subscribing Underwriters are not responsible for the subscription of any co subscribing Underwriter who for any reason does not satisfy all or part of its obligations.

## XXVI.  LICENSURE

A.    It is a condition of the coverage afforded under the Policy that the facilities of the **Named Insured** and any **Insured** requiring a license to practice shall be licensed in accordance with all relevant federal, state and local requirements. The **Named Insured** warrants that as of the inception date of this Policy it has secured all relevant licenses.

B.    If, during the **Policy Period**, any **Insured's** licensure status is altered by withdrawal, revocation, denial, suspension or failure to renew, the **Named Insured** shall give written notice of such change to the Underwriters within thirty days of the change becoming effective. Following receipt of such notice, the Underwriters may elect, at their sole option, to revise any Insuring Agreements. Definitions, Exclusions, Endorsements or other Conditions of this Policy with respect to the **Insured**, with effect from such date of such withdrawal, revocation, denial, suspension or failure to renew. Such action does not waive the Underwriters' option to invoke the provisions of Section XIX. of this Policy. Furthermore, the Underwriters will have no obligation to respond to any **Claim** arising out of **Professional Services** or an **Accident** which took place subsequent to the date the of withdrawal, revocation, denial, suspension or failure to renew.