UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON, SYNDICATES
2623/623

      Plaintiff,

v.
                                CASE NO. 0:18-CV-60839-CMA

SOLUTIONS RECOVERY CENTER, LLC,
DANIEL J. CALLAHAN, SEAN
CALLAHAN, and RICHARD GLASER

      Defendant.

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SYNDICATES 2623/623 (hereinafter, "Underwriters"), by and through its undersigned counsel, sues Defendant, SOLUTIONS RECOVERY CENTER, LLC, DANIEL J. CALLAHAN, SEAN CALLAHAN, and RICHARD GLASER for declaratory relief, and in support thereof states as follows:

### JURISDICTION AND VENUE

1.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based upon diversity of citizenship of the parties and the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under certain policies of insurance.

3.      The amount in controversy is in excess of this Court's minimum jurisdictional amount of $75,000.00, exclusive of interest, costs, and attorneys' fees.

4.      The Court has personal jurisdiction over Defendant, Solutions Recovery Center, LLC because, upon information and belief Solutions Recovery Center, LLC is and was at all

relevant times a limited liability company, conducting its business in Florida, with its principal place of business located in Coconut Creek, Florida.

5.      The Court has personal jurisdiction over Defendant, Daniel J. Callahan because he is and was, upon information and belief, a resident of and domiciled in this state and district at all relevant times.

6.      The Court has personal jurisdiction over Defendant, Sean Callahan because he is and was, upon information and belief, a resident of and domiciled in this state and district at all relevant times.

7.      The Court has personal jurisdiction over Defendant, Richard Glaser because he is and was, upon information and belief, a resident of and domiciled in this state and district at all relevant times.

8.      The amount in controversy includes the policy limits at issue in the present case, which include limits of $1,000,000 for each Claim and $3,000,000 in the aggregate.

9.      Furthermore, the plaintiff in the Underlying Action for which the Defendants seek insurance coverage, alleges damages of at least $30,000,000. *See Underlying Action Complaint at ¶1. A copy of the Complaint in the Underlying Action is attached herein as* **Exhibit "A".**

10.     Venue is proper in the Southern District of Florida, pursuant to 28 U.S.C. §§ 1392(a) and 1391(c), because the present claim for declaratory relief arose in this district. Additionally, Defendant, Solutions Recovery Center, LLC operates its principal place of business in Broward County, Florida. Even more, the underlying action for damages which gives rise to this coverage dispute is pending in the United States District Court for the Southern District of Florida.

11.     All conditions precedent to the filing of this action have occurred.

## PARTIES

12.    At all times material to this action, Plaintiff, Certain Underwriters at Lloyd's, London, Syndicates 2623/623 (hereinafter, "Underwriters") is and were Lloyd's of London syndicates duly organized and existing under the laws of England, United Kingdom, with their principal place of business in London, England.

13.    Certain Underwriters at Lloyd's, London, Syndicate 623 is a foreign unincorporated association with its principal offices in London, England, United Kingdom. Syndicate 623 receives its underwriting capital contributions from Members (also known as "Names") that are citizens of the United States. At all relevant times herein, Syndicate 623 has not had any Members or Names residing in Florida.

14.    Certain Underwriters at Lloyd's, London, Syndicate 2623 is and was a foreign unincorporated association with its principal offices in London, England, United Kingdom. Syndicate 2623 receives all of its underwriting capital contributions from Beazley Underwriting Ltd., which is a limited liability company incorporated in the United Kingdom and is a wholly owned subsidiary of Beazley PLC, which is incorporated in Jersey. Syndicate 2623 is not a citizen of the United States and at all relevant times herein, it has not had any Members or Names residing in Florida.

15.    At all times material to this action, Defendant, Solutions Recovery Center, LLC (hereinafter, "Solutions") is and was a limited liability company, having its principal place of business in Coconut Creek, Florida.

16.    At all times material to this action, Defendant, Solutions has and had five members, all of whom are and were domiciled in the state of Florida and, therefore, are and were citizens of the state of Florida. Solutions' members are and were Daniel J. Callahan, Sean Callahan, Richard Glaser, David Shea and Paul Celnik.

17.    At all times material to this action, Solutions' member, Daniel J. Callahan, is and was domiciled in the state of Florida, and therefore is and was a citizen of the state of Florida.

18.    At all times material to this action, Solutions' member, Sean Callahan, is and was domiciled in the state of Florida, and therefore is and was a citizen of the state of Florida.

19.    At all times material to this action, Solutions' member, Richard Glaser, is and was domiciled in the state of Florida, and therefore is and was a citizen of the state of Florida.

20.    At all times material to this action, Solutions' member, David Shea, is and was domiciled in the state of Florida, and therefore is and was a citizen of the state of Florida.

21.    At all times material to this action, Solutions' member, Paul Celnik, is and was domiciled in the state of Florida, and therefore is and was a citizen of the state of Florida.

22.    Accordingly, since all members of Solutions are and were Florida citizens, Solutions is and was a citizen of the state of Florida. *See Rolling Greens MHP, L.P. v. Comcast SCH Holding LLC,* 374 F.3d 1020, 1022 (11th Cir. 2004).

23.    At all times material to this action, Defendant, Daniel J. Callahan is and was domiciled in the state of Florida. Therefore, Defendant, Daniel J. Callahan is and was a citizen of the state of Florida.

24.    At all times material to this action, Defendant, Sean Callahan is and was domiciled in the state of Florida. Therefore, Defendant, Sean Callahan is and was a citizen of the state of Florida.

25.    At all times material to this action, Defendant, Richard Glaser is and was domiciled in the state of Florida. Therefore, Defendant, Richard Glaser is and was a citizen of the state of Florida.

26.     Therefore, there is complete diversity of citizenship as Plaintiff is and was a United Kingdom citizen and all defendants are and were Florida citizens.

## FACTUAL ALLEGATIONS

### The Underlying Action

27.     On or about December 31, 2017, Kipu Systems LLC, a Florida limited liability company, filed a lawsuit in the United States District Court for the Southern District of Florida (hereinafter, the "Underlying Action") against defendants (hereinafter, "Underlying Defendants") which includes the defendants to the present action. *See Exhibit "A".*

28.     The Underlying Action is Case No. 1:17-cv-24733-KMW-EGT, styled *Kipu Systems LLC v. Zencharts LLC, Zen Medical LLC, Solutions Recovery Center LLC, Solutions Recovery LLC, Website Consultants Inc., Callahan Holdings Inc., Richard Glaser, Keith Houlihan, Sean Callahan, Daniel J. Callahan, Seamus Callahan, Yanko Karkalichev, and Anton Aladzhov.*

29.     The Plaintiff in the Underlying Action, Kipu Systems LLC (hereinafter, "Kipu") alleges that the Underlying Defendants misappropriated trade secrets and intellectual property owned by Kipu, and subsequently manufactured and sold an infringing, copycat product that implements the misappropriated intellectual property and infringes upon trademarked names and trade secrets.

30.     More specifically, Kipu alleges in the Underlying Action that it created an innovative software system for keeping and managing Electronic Medical Records, to be used in and by addiction treatment facilities. Kipu alleges its system automates the maintenance of records of addiction treatment facilities, improving addiction patient care and clinicians' productivity through the innovative use of technology.

31.     Kipu further alleges in the Underlying Action that the Kipu system required thousands of hours and millions of dollars to develop.

32.     Kipu credits its system's success to the creation of valuable trade secrets in the design on the Kipu EMR system, such as a proprietary algorithm for assisting in treating patients, an "Urgent Issue" feature, easy laboratory ordering interface, and a feature which connects the entire patient treatment process.

33.     Additionally, Kipu alleges it owns five issued Federal trademark registrations under the U.S. Patent & Trademark Office, a U.S. Copyright Registration entitled "Kipu EMR," and a Trademark for its "OTO" feature, which it claims is one of the most important features of the system because it allows clinicians to create a record of disruptive patients who negatively affect others in the facility.

34.     Kipu alleges in the Underlying Action that Daniel J. Callahan, the owner of Coconut Creek, Florida based addiction treatment facility, Solutions, noticed the success of Kipu's system and hatched a plan with his son, Sean Callahan and with Richard Glaser, to purchase a license to use the Kipu system in Solutions, in order to gain access to the system and create a copycat EMR product without spending the time and money Kipu spent. Kipu alleges that Sean Callahan and Richard Glaser were owners of Website Consultants LLC, a computer/software programming company and defendant to the Underlying Action.

35.     The Underlying Action alleges that in 2013, Daniel J. Callahan, Sean Callahan and Richard Glaser came up with the name for their copycat system, Zencharts, purchased the domain name zencharts.com, and engaged the help of Website Consultants' international programmers based in Bulgaria, Underlying Defendants Yanko Karkalichev and Anton Aladzhov. Around this time, Kipu alleges Sean Callahan and Richard Glaser were made managing members of Solutions,

which allegedly legitimatized their inquiries about the Kipu system since Kipu allegedly did not know that they also owned a software development company.

36.     The Underlying Action further alleges that in October of 2013, Solutions entered into a software license agreement with Kipu to use the Kipu system in Solutions' Coconut Creek facility. As a result, it is alleged that Solutions obtained "Super-Admin" log-in credentials to the Kipu system, which provided allegedly Solutions with expanded access and review rights. Kipu alleges that the various admins of Solutions logged into the Kipu system a disproportionately high number of times in an effort to misappropriate the Kipu system and that Solutions asked Kipu various technical questions and sought extensive details of the Kipu system, which Kipu responded. Kipu claims that the two Bulgarian programmers employed by Website Consultants were also given "Super-Admin" credentials by Solutions, in an alleged effort to study the system from Bulgaria and reverse engineer Kipu's system to create a copycat system.

37.     The Underlying Action further alleges that by June of 2014, the Underlying Defendants had uncovered the proprietary information from Kipu's system and by January 2015, they allegedly launched their copycat system called Zencharts.

38.     The Underlying Action further alleges that once Kipu withdrew Solutions' access to its system, the underlying defendants gained unauthorized access to the Kipu system through another existing Kipu client and continued reviewing the inner workings of the Kipu system.

39.     Kipu further alleges in the Underlying Action that Keith Houlihan, who provided the funding for the alleged copycat Zencharts system, moved into the same building as Kipu headquarters and eavesdropped on Kipu's communications with clients so Zencharts can then target those same clients. Kipu also alleges Zencharts offered bribes to Kipu employees for information regarding the technology and customer lists.

40. Based on the above, Kipu asserted the following causes of action in the Underlying

Action:

a) Count I is Violations of Florida's Computer Abuse and Data Recovery Act ("CADRA"), pursuant to Fla. Stat. §668.801-805. CADRA protects the owner of information in computers used in the operation of business, by making it illegal for individuals to intentionally cause harm by obtaining unauthorized information from such protected computers. Kipu claims Underlying Defendants' alleged misappropriation of Kipu's intellectual property violates this law.

b) Count II is Breach of Contract against Solutions for allegedly breaching the 2013 license agreement it supposedly entered into when it first obtained use of the Kipu system for the Solutions center at Coconut Creek. Kipu alleges that the agreement was for $2,000 for the first month and $1,000 for the next eight months, and claims that Solutions never paid any of the eight $1,000 monthly payments.

c) Count III is Breach of Contract for the alleged breach of the January 2014 Kipu Terms of Service, by Solutions allegedly using the system for purposes other than legitimate business purposes, such as reverse engineering, copying intellectual property, and accessing the system to develop an infringing product.

d) Count IV is Misappropriation of Trade Secrets in violation 18 U.S.C. §1836. In support, Kipu alleges that it is the only rightful owner of certain trade secrets, such as the Kipu system and OTO Program, and took reasonable measures to keep this information secret. However, Kipu alleges the Underlying Defendants used and employed the Kipu system in an authorized manner that offered them access to the trade secrets, which they then allegedly used to develop a similar product.

e) Count V is Civil Conspiracy to Commit Trade Secret Theft against Richard Glaser, Sean Callahan, Dan Callahan, Seamus Callahan, Keith Houlihan, Yanko Karkalichev, and Anton Aladzhov. Kipu claims the alleged actions by these individuals were in furtherance of a carefully planned conspiracy to steal Kipu's trade secrets and develop a competing product.

f) Count VI is Conversion of Confidential and Proprietary Information. Kipu alleges that the Underlying Defendants willfully and intentionally stole Kipu's intellectual property.

g) Count VII is Common Law Trespass to Chattels for the Underlying Defendants' alleged trespass upon Kipu's system for the purpose of misappropriating intellectual property.

h) Count VIII is Trademark Counterfeiting under 15 U.S.C. §1114 and 1116. Kipu alleges that Underlying Defendants counterfeited and infringed on its OTO Program, mentioned above. Kipu claims OTO has gained considerable popularity

in the addiction treatment industry and is associated with Kipu's brand. Allegedly, the Zencharts system contains a similar feature, which has the same function and is called "OTO option." Therefore, Kipu claims Underlying Defendants are in violation of its registered trademark in violation of Sections 32(1) and 34(d)(1)(B) of the Lanham Act, 15 U.S.C. § 1114(1) and 1116(d)(1)(B).

i) Count IX is Infringement of United States Trademark Registration 15 U.S.C. §1114. Kipu alleges the USPTO issued a Trademark Registration to Kipu for the mark OTO. Therefore, for reasons similar to the previous count, Kipu alleges infringement of its trademarked OTO mark.

j) Count X is Federal Unfair Competition – Passing Off, under 15 U.S.C. §1125. As its basis, Kipu points to Underlying Defendants' use of "OTO" in its product and related marketing and promotion. This unauthorized use of "OTO" allegedly misleads and deceives the consumer into believing Zencharts is associated with Kipus' system, in violation of 15 U.S.C. §1125(a).

k) Count XI is Florida Common Law Unfair Competition, for similar alleged reasons as Count X.

l) Count XII is Violation of Florida Deceptive and Unfair Practices Act under Fla. Stat. §501.204, which provides that unfair and/or deceptive acts and practices in conduct of any trade or commerce are unlawful.

m) Finally, Count XIII is Tortious Interference with Business Relationships, for Underlying Defendants' alleged interference and disruption of the relationships between Kipu and its users/clients. Kipu alleges defendants' actions caused Kipu to lose a significant amount of users and potential users.

41.     After being served with the Underlying Action's Summons and Complaint in early 2018, Solutions requested insurance coverage from Underwriters pursuant to an insurance policy Underwriters issued to Solutions.

42.     As will be discussed in more detail below, the insurance policy issued by Underwriters does not provide coverage, neither defense nor indemnity, for the Underlying Action.

43.     Accordingly, Underwriters advised Solutions that they were disclaiming coverage.

44.     Solutions' defense counsel in the Underlying Action and personal counsel, have continually disputed Underwriters' evaluation of coverage in multiple letters, emails, and telephone conversations.

45.     In response to Solutions' underlying defense counsel and personal counsel's assertions of coverage, Underwriters have always provided factual, legal, and insurance policy language support for its position that the Underlying Action is not covered under the Underwriters insurance policy.

46.     Therefore, Underwriters are now seeking a declaration that the Underwriters insurance policy does not provide insurance coverage, neither defense nor indemnity, for the Underlying Action.

<b><u>UNDERWRITERS POLICY</u></b>

47.     Underwriters, issued a Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance Policy, Policy No. W15F3F170401, to Solutions Recovery Center, LLC for the policy period of June 17, 2017 to June 17, 2018 (the "Policy"). The Policy provides limits of liability of $1,000,000 Each Claim and $3,000,000 Term Aggregate. *A copy of the Policy is attached herein as **Exhibit "B".***

48.     The Policy also has an endorsement that schedules a Retroactive Date of December 12, 2014 for Medical Professional Liability, General Liability and Advertising Liability for the Solutions facility in Coconut Creek, Florida.

49.     The Policy contains the following pertinent language:

> This is a Claims Made and Reported Policy. Except to such extent as may otherwise be provided herein, the coverage afforded under this insurance policy is limited to those Claims which are first made against the Insured and reported to the Underwriters during the Policy Period…

****

**I. Insuring Agreements**

**A. Coverage**

****

### 2. General Liability and Advertising Liability

The Underwriters will pay on behalf of the **Insured Damages** and **Claims Expenses** which the **Insured** shall become legally obligated to pay or assumed by the Insured under contract because of any **Claim** or **Claims** first made against any **Insured** during the **Policy Period** and reported to the Underwriters during the **Policy Period** or any applicable **Extended Reporting Period**, for **Personal Injury**, **Property Damage**, or **Advertising Liability** caused by an **Accident**, except as excluded or limited by the terms, conditions and exclusions of this Policy.

\*\*\*\*

### II. Persons Insured

Each of the following is an Insured under this insurance to the extent set forth below:

\*\*\*\*

(c) if the **Named Insured** designated in item 1. of the Declarations is other than an individual, partnership or joint venture, the organization so designated and any executive officer, director, stockholder, **Employee**, employed medical director, administrator, volunteer worker, student, interns, or employed physician, surgeon, osteopath, dentist, orthodontist, chiropractor, podiatrist, psychiatrist, psychologist, nurse practitioner, physician assistant, CRNA, or midwife, thereof while acting within the scope of his or her duties as such; provided, however, that coverage is contingent on any such employed physician, surgeon, osteopath, dentist, orthodontist, chiropractor, podiatrist, psychiatrist, psychologist, nurse practitioner, physician assistant, CRNA, or midwife, being scheduled in Item 10. of the Declarations.

\*\*\*\*

This Policy shall not apply:

\*\*\*\*

(h) to any liability arising out of the conduct of any partnership or joint venture of which the **Insured** is a partner or member and which is not designated in this Policy as a **Named Insured.**

\*\*\*\*

### IV. EXCLUSIONS

****

## 2. Exclusions applicable to Insuring Agreement I.A.2, General Liability and Advertising Liability

The coverage under this Policy does not apply to **Damages** or **Claims Expenses** incurred with respect:

****

(n) to any **Claim** relating to **Advertising Liability** arising out of:

> (1) failure of performance of contract; provided, however, that this Exclusion shall not apply to unauthorized appropriation of ideas based upon alleged breach of an implied contract;

> (2) infringement of patent, trademark, service mark, and trade name, other than titles or slogans by use thereof on or in connections with goods, products or services sold, offered for sale or advertised; or

> (3) incorrect description or mistake in advertised price of goods, products or services sold, offered for sale or advertised.

## 3. Exclusions applicable to both Insuring agreements I.A.1., and I.A.2., Professional Liability and General Liability and Advertising Liability

The coverage under this Policy does not apply to **Damages** or **Claims Expenses** incurred with respect:

(a) to any **Claim** made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in the Declarations, which is owned by any **Insured** or in which any **Insured** is a trustee, partner, officer, director or **Employee**;

****

(d) to any **Claim** or circumstance that might lead to a **Claim** known to any **Insured** prior to the inception of this Policy and not disclosed to the Underwriters at inception;

****

(j) to any **Claim** for punitive or exemplary **Damages**, or **Damages** which are a multiple of compensatory **Damages**, fines, sanctions, taxes or penalties, or the return of or reimbursement for fees, costs or expenses charged by any **Insured**;

\*\*\*\*

(r) to any **Claim** for **Personal Injury, Property Damage** or **Advertising Liability** based upon or arising out of the **Named Insured's Products;**

\*\*\*\*

(u) to any **Claim** based upon or arising out of any **Insured** gaining any profit, remuneration or advantage to which such Insured was not legally entitled;

\*\*\*\*

(y) to any **Claim** based upon or arising out of any actual or alleged violation of any federal, state, or local anti-trust, restraint of trade, unfair competition, or price fixing law, unfair or deceptive trade practices, or consumer protection any rules or regulation promulgated thereunder…

## V. DEFINITIONS

(a) **"Accident"** means an event or happening, including continuous or repeated exposure to substantially the same general harmful conditions, which involves one or more persons or entities, and which results in **Personal Injury, Property Damage** or **Advertising Liability** to such persons or entities.

(b) **"Advertising Liability"** means injury arising out of one or more of the following, committed in the course of the **Insured's** advertising activities:

    (1) libel, slander or defamation;

    (2) infringement of copyright, title slogan, trade dress, or advertising idea;

    (3) piracy or idea misappropriation under an implied contract; or

    (4) invasion of right of privacy, subject always to Exclusion IV.3.q.

\*\*\*\*

(d) **"Bodily Injury"** means physical injury (including death at any time resulting therefrom), mental injury, mental illness, mental anguish, humiliation, emotional upset, shock, sickness, disease or disability.

(e) **"Claim"** means a written notice received by any **Insured** of an intention to hold the **Insured** responsible for compensation for **Damages**, including the service of suit or institution of arbitration against the **Insured**.

\*\*\*\*

(g) **"Damages"** means a civil monetary judgment, award or settlement and does not include:

> (1) the restitution of compensation and expenses paid to the **Insured** for services and goods; and

> (2) judgments or awards deemed uninsurable by law.

\*\*\*\*

(m) **"Named Insured's Products"** means goods or products manufactured, sold, handled or distributed by the **Named Insured** or by others trading under its name, including any container thereof (other than a vehicle) but shall not include a vending machine or any property, other than such container rented to or located for use of others but not sold.

\*\*\*\*

(q) **"Professional Services"** means those professional services specifically identified in Item 11. of the Declarations

Item 11. of the Declarations schedules as Professional Services the following: Inpatient and Outpatient Adult Addiction Facility.

\*\*\*\*

## <u>COUNT I – DECLARATORY RELIEF AS TO SOLUTIONS</u>

50.     Plaintiff, Underwriters hereby incorporates by reference and restates paragraph 1-49 as if fully stated herein.

51.     It is Underwriters' position that the allegations alleged in the Underlying Action are not covered under the Policy.

52.     Insuring Agreement I.A.1–Professional Liability of the Policy provides coverage for claims for Bodily Injury or Professional Services. *See Exhibit B at Pg. 1/25.*

53.     The Policy defines "Bodily Injury" as "physical injury (including death any time resulting therefrom), mental injury, mental illness, mental anguish, humiliation, emotional upset, shock, sickness, disease or disability." *See Exhibit B at Pg. 14/25.*

54.     The Underlying Action does not allege Bodily Injury, and therefore the coverage for Bodily Injury under Insuring Agreement I.A.1 does not provide coverage for the Underlying Action.

55.     The Policy defines "Professional Services" as "Inpatient & Outpatient Adult Addiction Facility." *See Exhibit B at Item 11, Declarations Pg. 3/4.*

56.     The Underlying Action does not allege liability arising from Professional Services, as it does not claim any liability out of Solutions' treatment of its patients in the adult addiction facility. Therefore the coverage for Professional Services under Insuring Agreement I.A.1 does not provide coverage for the Underlying Action.

57.     Insuring Agreement I.A.2.–General and Advertising Liability of the Policy provides coverage for claims for Personal Injury, Property Damage, or Advertising Liability caused by an Accident. *See Exhibit B at Pg. 1/25.*

58.     The Policy defines Personal Injury as: (1) Bodily Injury; (2) false arrest, false imprisonment, wrongful eviction, detention or malicious prosecution; (3) libel, slander, defamation of character or invasion of right of privacy, unless arising out of any advertising activities; or (4) wrongful eviction from, wrongful entry into, or invasion of the right of private

occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor. *See Exhibit B at Pg. 16/25.*

59.     Clearly, the Underlying Action does not contain any claim of or arising out of Personal Injury. Therefore, the Policy's Insuring Agreement I.A.2 for Personal Liability does not provide coverage for the Underlying Action.

60.     The Policy defines Property Damage as (1) physical injury to or destruction of tangible property, including consequential loss of use thereof; or (2) loss of use of tangible property which has not been physically injured or destroyed. *See Exhibit B at Pg. 16,17/25.*

61.     The Underlying Action does not allege Property Damage as defined in the Policy because it does not allege physical injury or destruction of tangible property, nor does it allege loss of use of tangible property. Accordingly, Insuring Agreement I.A.2 for claim arising out of Property Damage does not provide coverage for the Underlying Action.

62.     In its request for coverage for the Underlying Action, Solutions relies on the few allegations in the Underlying Action that may constitute Advertising Liability against Solutions.

63.     The Advertising Injury allegations in the Underlying Action are not made against Solutions.

64.     However, to the extent any allegation of Advertising Liability can be construed as being against Solutions, such allegation falls under a Policy exclusion or is otherwise excluded under the Policy.

65.     Under Count VIII – Trademark Counterfeiting under 15 U.S.C §§ 11141(1) and 1116(d)(1)(B) of the Underlying Action and in support thereof, Kipu alleges that "ZenCharts and the Defendants which own or control ZenCharts are advertising and promoting ZenCharts' competing EMR software, which uses and shows the OTO Mark." *See Exhibit A at ¶191.*

66.     The above allegation in ¶191 of the Underlying Action is not made against Solutions because it is made against the company supposedly selling the allegedly infringing product, ZenCharts, and relates to its sale of the ZenCharts system. By this time, Solutions' alleged involvement in the alleged misappropriation scheme had been long terminated, as claimed by the allegations in the Underlying Action that Solutions was the addiction treatment facility that initially contacted and contracted with Kipu to implement the Kipu system in the Solutions facility. Kipu alleges it terminated Solutions' access to the system shortly thereafter once it realized the alleged malfeasance of the Solutions officers in their use of the Kipu system. Therefore, by the time ZenCharts allegedly began selling and advertising its alleged copycat product, Solutions was allegedly no longer involved and only ZenCharts was allegedly still involved at that time.

67.     Moreover, the allegation in ¶191 of the Underlying Action is specifically made against "ZenCharts and the Defendants which own or control ZenCharts." Solutions does not own or control ZenCharts and, thus, this allegation is not made against Solutions.

68.     Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegation on ¶191 of the Underlying Action was made against Solutions, same is excluded under the Policy by Exclusion IV.2.(n), which excludes coverage for "any Claim relating to Advertising Liability arising out of:… (2) infringement of patent, trademark, service mark, and trade name, other than titles or slogans by use thereof on or in connection with goods, products or services sold, offered for sale or advertised…" *See Exhibit B at Pg. 7/25.*

69.     The allegation on ¶191 of the Underlying Action was made under and in support of Count VIII – Trademark Counterfeiting under 15 U.S.C §§ 11141(1) and 1116(d)(1)(B). Specifically, the allegation is made as part of Kipu's claim that the ZenCharts system uses the OTO

Mark, which is allegedly trademarked to Kipu and therefore Kipu claims that ZenCharts and its owners are allegedly infringing on this trademark. This is directly excluded by Exclusion IV.2.(n), which excludes coverage for claims of Advertising Liability arising out of "infringement of …trademark, service mark, and trade name…"

70.     Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegation on ¶191 of the Underlying Action was made against Solutions, same is also excluded under the Policy by Exclusion IV.3.(a), which excludes coverage for "any Claim made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in the Declarations, which is owned by any Insured or in which any Insured is a trustee, partner, officer, director or Employee." *See Exhibit B at Pg. 7/25.*

71.     As stated above, the allegation on ¶191 of the Underlying Action is made against "ZenCharts and the Defendants which own or control ZenCharts." Therefore, this allegation is directly excluded by Exclusion IV.3.(a). ZenCharts is not owned by the insured, Solutions, but it is owned and operated by owners, officers, and directors of Solutions. Therefore, this allegation is excluded under the Policy's Exclusion IV.3.(a).

72.     Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegation on ¶191 of the Underlying Action was made against Solutions, same is also excluded under the Policy by Exclusion IV.3.(d), which excludes coverage for "any claim or circumstance that might lead to a claim known to any insured prior to the inception of this Policy and not disclosed to the Underwriters at inception." *See Exhibit B at Pg. 7/25.*

73.      Solutions allegedly engaged in the supposed scheme to misappropriate and reverse engineer the Kipu system since 2013 until its access was eliminated near the end of 2014 and beginning of 2015, in furtherance of allegedly creating a copycat system, and therefore knew of a "circumstance that might lead to a claim known to any insured prior to the inception of this Policy and not disclosed to" Underwriters at the inception of this Policy which was June 17, 2017.

74.      Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegation on ¶191 of the Underlying Action was made against Solutions, same is also excluded under the Policy by Exclusion IV.3.(u), which excludes coverage for "any Claim based upon or arising out of any Insured gaining any profit, remuneration or advantage to which such Insured was not legally entitled." *See Exhibit B at Pg. 11/25.*

75.      If Solutions was included in the allegation on ¶191 of the Underlying Action, which it is not, then this would mean that Solutions was allegedly gaining profit, remuneration or advantage by its unauthorized use of trademarked intellectual property in order to sell ZenCharts systems. Therefore, this allegation is excluded under Exclusion IV.3.(u).

76.      Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegation on ¶191 of the Underlying Action was made against Solutions, same is also excluded under the Policy by Exclusion IV.3.(y), which excludes coverage for Claims "based upon or arising out of any actual or alleged violation of any federal, state, or local anti-trust, restraint of trade, unfair competition, or price fixing law, unfair or deceptive trade practices, or consumer protection any rules or regulations promulgated thereunder." *See Exhibit B at Pg. 13/25.*

77.     The allegation on ¶191 of the Underlying Action alleges Trademark Counterfeiting under 15 U.S.C §§ 11141(1) and 1116(d)(1)(B). In addition to the allegation being made under Count VIII – Trademark Counterfeiting under 15 U.S.C §§ 11141(1) and 1116(d)(1)(B), the very next paragraph in the complaint states, "The Defendants' actions constitute trademark counterfeiting in violation of Sections 32(1) and 34(d)(1)(B) of the Lanham Act, 15 U.S.C §§ 11141(1) and 1116(d)(1)(B).

78.     Inarguably, this allegation is excluded by Exclusion IV.3.(y) for "alleged violation of any federal, state, or local anti-trust, restraint of trade, unfair competition, or price fixing law, unfair or deceptive trade practices, or consumer protection any rules or regulations promulgated thereunder." *See Exhibit B at Pg. 13/25.*

79.     Additionally, under Count X – Federal Unfair Competition – Passing Off 15 U.S.C. § 1125(a) of the Underlying Action and in support thereof, Kipu alleges that "Defendants' advertising and marketing of its misappropriated software under the Infringing Name all leads to the suggestion that there is some affiliation, endorsement, license or relationship between ZenCharts and Kipu, when there is not." *See Exhibit A at ¶214.*

80.     The allegation on ¶214 of the Underlying Action was not made against Solutions because it is alleging that ZenCharts used the OTO Mark in its system. As described above, Solutions has nothing to do with ZenCharts. By the time ZenCharts was allegedly selling its system, Solutions' alleged involvement had been long terminated and only ZenCharts was allegedly involved.

81.     In fact, two paragraphs above ¶214 of the Underlying Action, it states, "The Defendants have knowingly and intentionally used the 'OTO' and/or 'OTO Option' (the 'Infringing Name') in their competing ZenCharts System – as well as in the related marketing and promotion

of their competing EMR software." *See Exhibit A at ¶212*. Clearly, this allegation is made against ZenCharts related to its allegedly unauthorized use of the 'OTO' mark and is not directed at Solutions, which was the addiction facility center where the ZenCharts owners allegedly first used the Kipu software and supposedly began their alleged misappropriation of same.

82.     The next paragraph in the Underlying Action provides, "The Defendants' use of the Infringing Name suggests to relevant and prospective customers seeking EMR software for addiction treatment centers that the ZenCharts System is affiliated, sponsored, endorsed, licensed or related to Kipu and/or the Kipu EMR System, and its related rights to the trade name OTO, when it is not." *See Exhibit A at ¶213*. Inarguably, this allegation, even though it bundles up "Defendants" just like the allegations in ¶212 and ¶214, is only directed at ZenCharts and not Solutions.

83.     Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegations on ¶212 to ¶214 of the Underlying Action were made against Solutions, same are excluded under the Policy by Exclusion IV.2.(n), which excludes coverage for "any Claim relating to Advertising Liability arising out of:… (2) infringement of patent, trademark, service mark, and trade name, other than titles or slogans by use thereof on or in connection with goods, products or services sold, offered for sale or advertised…" *See Exhibit B at Pg. 7/25.*

84.     The allegations on ¶212 to ¶214 of the Underlying Action all arise out of the alleged trademark infringement of ZenCharts in its supposed use of the OTO Mark (sometimes referred to as 'Infringing Name' in the Underlying Action), which is allegedly trademarked to Kipu. This is directly excluded by Exclusion IV.2.(n), which excludes coverage for claims of Advertising Liability arising out of "infringement of …trademark, service mark, and trade name…"

85.     Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegations on ¶212 to ¶214 of the Underlying Action were made against Solutions, same are also excluded under the Policy by Exclusion IV.3.(a), which excludes coverage for "any Claim made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in the Declarations, which is owned by any Insured or in which any Insured is a trustee, partner, officer, director or Employee." *See Exhibit B at Pg. 7/25.*

86.     The allegations on ¶212 to ¶214 of the Underlying Action are made against ZenCharts for its alleged sale and promotion of the ZenCharts system, in which Solutions took no part as alleged in the Underlying Action. ZenCharts is not owned by the insured, Solutions, but it is allegedly owned and operated by owners, officers, and directors of Solutions. Therefore, this allegation is directly excluded under the Policy's Exclusion IV.3.(a).

87.     Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegations on ¶212 to ¶214 of the Underlying Action were made against Solutions, same are also excluded under the Policy by Exclusion IV.3.(d), which excludes coverage for "any claim or circumstance that might lead to a claim known to any insured prior to the inception of this Policy and not disclosed to the Underwriters at inception." *See Exhibit B at Pg. 7/25.*

88.     Solutions allegedly engaged in the supposed scheme to misappropriate and reverse engineer the Kipu system since 2013 until its access was eliminated near the end of 2014 and beginning of 2015, in furtherance of allegedly creating a copycat system, and therefore knew of a

"circumstance that might lead to a claim known to any insured prior to the inception of this Policy and not disclosed to" Underwriters at the inception of this Policy which was June 17, 2017.

89.     Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegations on ¶212 to ¶214 of the Underlying Action were made against Solutions, same are also excluded under the Policy by Exclusion IV.3.(u), which excludes coverage for "any Claim based upon or arising out of any Insured gaining any profit, remuneration or advantage to which such Insured was not legally entitled." *See Exhibit B at Pg. 11/25.*

90.     If Solutions was included in the allegations on ¶212 to ¶214 of the Underlying Action, which it is not, then this would mean that Solutions was allegedly gaining profit, remuneration or advantage by its allegedly unauthorized use of trademarked intellectual property in order to sell ZenCharts systems. Therefore, these allegations are excluded under Exclusion IV.3.(u).

91.     Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegations on ¶212 to ¶214 of the Underlying Action were made against Solutions, same are also excluded under the Policy by Exclusion IV.3.(y), which excludes coverage for Claims "based upon or arising out of any actual or alleged violation of any federal, state, or local anti-trust, restraint of trade, unfair competition, or price fixing law, unfair or deceptive trade practices, or consumer protection any rules or regulations promulgated thereunder." *See Exhibit B at Pg. 13/25.*

92.     The allegations on ¶212 to ¶214 of the Underlying Action allege Federal Unfair Competition –Passing Off, in violation of  15 U.S.C §1125(a). In addition to the allegations being

made under and in support of Count X – Federal Unfair Competition – Passing Off 15 U.S.C. §

1125(a), the same section states, "The Defendants improper actions are in violation of 15 U.S.C.

§1225(a) in that Defendants have used and continue to use in relation to commercial activities, a

false designation of origin, or a false or misleading description that is likely to cause confusion,

and to cause mistake, and to deceive, as to the affiliation, connection, or association of the

Defendants with Kipu." *See Exhibit A at ¶216.* The Underlying Action continues under the same

section, "…the Defendants' acts of unfair competition are willful and this is an exceptional case

within the meaning of 15 U.S.C. 1117."

93.     Inarguably, these allegations are excluded by Exclusion IV.3.(y) for "alleged

violation of any federal, state, or local anti-trust, restraint of trade, unfair competition, or price

fixing law, unfair or deceptive trade practices, or consumer protection any rules or regulations

promulgated thereunder." *See Exhibit B at Pg. 13/25.*

94.     Additionally, under Count XI – Florida Common Law Unfair Competition of the

Underlying Action and in support thereof, Kipu alleges that "The Defendants' actions regarding

the advertising, marketing, offer for sale and sale of EMR software in the drug and alcohol

addiction treatment industry constitutes unfair competition and an infringement of Kipu's common

law rights in the trade name OTO" *See Exhibit A at ¶223.*

95.     Again, this allegation is not against Solutions since it is about ZenCharts' alleged

sale of the ZenCharts supposed copycat system, of which Solutions played no part as alleged in

the Underlying Action. According to the Underlying Action, Solutions was just the addiction

treatment facility that initially contacted and contracted with Kipu to implement the Kipu system

in the Solutions facility. Kipu allegedly terminated Solutions' access shortly thereafter. Therefore,

by the time ZenCharts allegedly began selling and promoting its supposed copycat product, Solutions was allegedly no longer involved and only ZenCharts was allegedly involved.

96.    In short, ZenCharts allegedly sold and promoted the system, not Solutions. Furthermore, ZenCharts is not owned nor operated by Solutions. Therefore, this allegation is not made against Solutions.

97.    Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegation on ¶223 of the Underlying Action was made against Solutions, same is excluded under the Policy by Exclusion IV.2.(n), which excludes coverage "for any Claim relating to Advertising Liability arising out of:… (2) infringement of patent, trademark, service mark, and trade name, other than titles or slogans by use thereof on or in connection with goods, products or services sold, offered for sale or advertised…" *See Exhibit B at Pg. 7/25.*

98.    Again, this allegation arises out of ZenCharts' alleged infringement of the Kipu system and the trademarked OTO, and is therefore directly excluded by Exclusion IV.2(n), which excludes coverage for claims of Advertising Liability arising out of "infringement of …trademark, service mark, and trade name…"

99.    Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegation on ¶223 of the Underlying Action was made against Solutions, same is excluded under the Policy by Exclusion IV.3.(a), which excludes coverage for "any Claim made by or against or in connection with any business enterprise (including ownership, maintenance or care of any property in connection therewith), not named in the Declarations, which is owned by any

Insured or in which any Insured is a trustee, partner, officer, director or Employee." *See Exhibit B at Pg. 7/25.*

100.    As stated above, this allegation is about ZenCharts' alleged sale of a copycat product and trademark infringement. ZenCharts is not owned by the insured, Solutions, but it is allegedly owned and operated by owners, officers, and directors of Solutions. Therefore, this allegation is directly excluded under the Policy's Exclusion IV.3.(a)

101.    Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegation on ¶223 of the Underlying Action was made against Solutions, same is excluded under the Policy by Exclusion IV.3.(d), which excludes coverage for "any claim or circumstance that might lead to a claim known to any insured prior to the inception of this Policy and not disclosed to the Underwriters at inception." *See Exhibit B at Pg. 7/25.*

102.    Solutions allegedly engaged in the supposed scheme to misappropriate and reverse engineer the Kipu system since 2013 until its access was allegedly eliminated near the end of 2014 and beginning of 2015, in furtherance of allegedly creating a copycat system, and therefore knew of a "circumstance that might lead to a claim known to any insured prior to the inception of this Policy and not disclosed to" Underwriters at the inception of this Policy which was June 17, 2017.

103.    Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegation on ¶223 of the Underlying Action was made against Solutions, same is excluded under the Policy by Exclusion IV.3.(u), which excludes coverage for "any Claim based upon or arising out of any Insured gaining any profit, remuneration or advantage to which such Insured was not legally entitled." *See Exhibit B at Pg. 11/25.*

104.    If Solutions was included in the allegation on ¶223 of the Underlying Action, which it is not, the this would mean that Solutions allegedly was gaining profit, remuneration or advantage by its allegedly unauthorized use of trademarked intellectual property in order to sell ZenCharts systems. Therefore, this allegation is excluded under Exclusion IV.3.(u).

105.    Notwithstanding the above proof that this allegation was not made against Underwriters' insured, Solutions, and without waiving any right or defense to same, even assuming that the allegation on ¶223 of the Underlying Action was made against Solutions, same is excluded under the Policy by Exclusion IV.3.(y), which excludes coverage for Claims "based upon or arising out of any actual or alleged violation of any federal, state, or local anti-trust, restraint of trade, unfair competition, or price fixing law, unfair or deceptive trade practices, or consumer protection any rules or regulations promulgated thereunder." *See Exhibit B at Pg. 13/25.*

106.    The allegation on  ¶223 of the Underlying Action alleges violations of Florida Common Law Unfair Competition. In addition to the allegation being made under Count XI – Florida Common Law Unfair Competition, the paragraph immediately above states, "This Count XI is an action for unfair competition under the laws of the state of Florida." *See Exhibit A at  ¶222.* The next two paragraphs under the same section provide, "Kipu has been damaged by the Defendants' knowing and willful acts of unfair competition…" *See Exhibit A at  ¶224;* and "These acts of common law unfair competition have caused, and unless enjoined, will continue to cause Kipu irreparable harm." *See Exhibit A at  ¶225.*

107.    Inarguably, the allegation on ¶223 of the Underlying Action is excluded by Exclusion IV.3.(y) for "alleged violation of any federal, state, local anti-trust, restraint of trade, unfair competition, or price fixing law, unfair or deceptive practices, or consumer protection any rules or regulations promulgated thereunder." *See Exhibit B at Pg. 13/25.*

108.    No other allegations in the Underlying Action can be construed as Advertising Liability against Solutions.

109.    To the extent that any other allegation in the Underlying Action can be construed as Advertising Liability against Solutions, same is/are excluded under the Policy by pertinent exclusion(s) and/or other defenses.

110.    In addition to the above referenced exclusions and defenses applying to exclude coverage for each and every claim of Advertising Liability, the applicable retroactive date of December 12, 2014 for Advertising Liability arising out of the Solutions Coconut Creek location, further bars coverage for such allegations. *See Exhibit B at Endorsement E02867.*

111.    Most or all of the allegations against Solutions occurred prior to the retroactive date, and are therefore excluded from coverage. *See Exhibit B at Endorsement E02867.*

112.    Furthermore, notwithstanding the fact that all Advertising Liability is excluded, any allegation of Advertising Liability must arise out of an "Accident" under the Policy. The Policy defines "Accident" as "an event or happening, including continuous or repeated exposure to substantially the same general harmful conditions, which involves one or more persons or entities, and which results in Personal Injury, Property Damage or Advertising Liability to such persons or entities." Therefore, that the allegations against Solutions of misappropriation of the Kipu system began and/or occurred before the retroactive date means that any allegations of later conduct are part of the same "Accident" as a continuation of substantially the same general harmful conditions.

113.    Accordingly, coverage is barred under the applicable retroactive date because the "Accident" occurred prior to the retroactive date.

114.    Furthermore, the Policy contains an endorsement titled Retroactive Limitations Clause, which provides: "There shall be no liability hereunder in respect of any Claim:...(b) arising

out of any circumstance or occurrence known to the Insured prior to the inception hereof and not disclosed to the Underwriters at inception." *See Exhibit B at Endorsement E00985.*

115.    As described above, the Policy period is June 17, 2017 – June 17, 2018, yet according to the Underlying Action, Underlying Defendants' alleged malfeasance in relation to the Kipu system began as early as 2013, Underlying Defendants had allegedly misappropriated the intellectual property by 2014, and were allegedly selling the ZenCharts system by 2015.

116.    Therefore, coverage is also barred under the Retroactive Limitations Clause endorsement because the Claim arises out of an alleged circumstance or occurrence known to insureds prior to the inception of the Policy.

117.    Furthermore, multiple causes of action in the Underlying Action demand exemplary and punitive damages. However, Exclusion IV.3(j) of the Policy specifically excludes coverage for punitive or exemplary damages. *See Exhibit B at Pg. 8/25.*

118.    In sum, all allegations against Solutions in the Underlying Action are excluded by the applicable retroactive date and Retroactive Limitations Clause. Moreover, all allegations that may be construed as Advertising Liability against Solutions are also excluded by Policy exclusions. Finally, no other type of coverage in the Policy besides for Advertising Liability is implicated by any of the allegations in the Underlying Action.

WHEREFORE, Plaintiff, Certain Underwriters at Lloyd's, London, Syndicates 2623/623 respectfully request this Honorable Court enter judgment in its favor, declaring that:

A.    No coverage exists under the Underwriters Policy for the claims which have been asserted against Solutions Recovery Center, LLC in the Underlying Action;

B.     Certain Underwriters at Lloyd's, London, Syndicates 2623/623 have no duty to defend and/or indemnify Solutions Recovery Center, LLC in the Underlying Action.

C.     Any and all such other relief this Honorable court deems just and proper under the circumstances.

## COUNT II – DECLARATORY RELIEF AS TO DANIEL J. CALLAHAN, SEAN CALLAHAN AND RICHARD GLASER

119.    Plaintiff, Underwriters hereby incorporate by reference and restates paragraph 1-118 as if fully stated herein.

120.    According to the Underlying Action and upon information and belief, Daniel J. Callahan was at all times relevant to this action and is the owner and CEO/Program Director at Solutions Recovery Center in Coconut Creek, Florida.

121.    According to the Underlying Action and upon information and belief, Richard Glaser was at all times relevant to this action a managing member and CFO of Solutions Recovery Center in Coconut Creek, Florida.

122.    According to the Underlying Action and upon information and belief, Sean Callahan was at all times relevant to this action manager of Solutions Recovery Center in Coconut Creek, Florida.

123.    Under the Policy's section titled Persons Insured, the insureds under the Policy includes the Named Insured and "the organization so designated and any executive officer, director, stockholder, Employee…while acting within the scope of his or her duties as such." Therefore, Solutions is an insured as the Named Insured, and Daniel J. Callahan, Sean Callahan and Richard Glaser are insureds as executive officers, directors and stockholders, but only to the extent they were acting within the scope of their duties as such.

124.    Any and all allegations in the Underlying Action against Daniel J. Callahan, unrelated to his respective duties within Solutions, and/or while he was no longer in his position with Solutions, are not covered by the Policy.

125.    Any and all allegations in the Underlying Action against Sean Callahan, unrelated to his respective duties within Solutions, and/or while he was no longer in his position with Solutions, are not covered by the Policy.

126.    Any and all allegations in the Underlying Action against Richard Glaser, unrelated to his respective duties within Solutions, and/or while he was no longer in his position with Solutions, are not covered by the Policy.

127.    To the extent that there are any allegations in the Underlying Action against Daniel J. Callahan, Sean Callahan and/or Richard Glaser related to their duties within Solutions, such allegations either do not trigger any insuring agreement under the Policy, are excluded by the exclusions in the Policy discussed herein, are barred due to the Retroactive Date and Retroactive limitations clause, and/or are otherwise excluded from coverage under the Policy.

128.    Furthermore, any and all allegations against any of the other Underlying Defendants besides for Solutions, Daniel J. Callahan, Sean Callahan and Richard Glaser are not covered by the Policy because said parties are not insureds under the Policy's definition of Persons Insured.

129.    Any and all allegations against ZenCharts LLC are not covered by the Policy.

130.    Any and all allegations against Zen Medical LLC are not covered by the Policy.

131.    Any and all allegations against Solutions Recovery LLC are not covered by the Policy.

132.   Any and all allegations against Website Consultants Inc. are not covered by the Policy.

133.   Any and all allegations against Callahan Holdings Inc. are not covered by the Policy.

134.   Any and all allegations against Keith Houlihan are not covered by the Policy.

135.   Any and all allegations against Seamus Callahan are not covered by the Policy.

136.   Any and all allegations against Yanko Karkalichev are not covered by the Policy.

137.   Any and all allegations against Anton Aladzhov are not covered by the Policy.

WHEREFORE, Plaintiff, Certain Underwriters at Lloyd's, London, Syndicates 2623/623, respectfully request this Honorable Court enter judgment in its favor, declaring that:

A.   No coverage exists under the Underwriters Policy for the claims which have been asserted against Daniel J. Callahan, Sean Callahan and Richard Glaser in the Underlying Action;

B.   Certain Underwriters at Lloyd's, London, Syndicates 2623/623 has no duty to defend and/or indemnify Daniel J. Callahan, Sean Callahan and Richard Glaser in the Underlying Action.

C.   No coverage exists under the Underwriters Policy for the claims which have been asserted against the other Underlying Defendants in the Underlying Action;

D.   Certain Underwriters at Lloyd's, London, Syndicates 2623/623 has no duty to defend and/or indemnify any of the other Underlying Defendants in the Underlying Action.

      E.      Any and all such other relief this Honorable court deems just

and proper under the circumstances.

Dated: April 18, 2018

                      Respectfully submitted,

                      /s/Rory Eric Jurman
                      Rory Eric Jurman
                      Fla. Bar No. 194646
                      Email: rjurman@fowler-white.com

                      Steven S. Cula
                      Fla. Bar No. 1002949
                      Email: scula@fowler-white.com

                      FOWLER WHITE BURNETT, P.A.
                      One Financial Plaza, Suite 2100
                      100 Southeast Third Avenue
                      Fort Lauderdale, Florida 33394
                      Telephone:   (954) 377-8100
                      Facsimile:    (954) 377-8101
                      ***Attorneys for Plaintiff, Underwriters***