UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 18-60839-CIV-ALTONAGA/Seltzer

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON, SYNDICATES
2623/623,

       Plaintiff,

v.

SOLUTIONS RECOVERY CENTER, LLC,
DANIEL J. CALLAHAN, SEAN
CALLAHAN, and RICHARD GLASER,

       Defendants.

## PLAINTIFF, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM

Plaintiff, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SYNDICATES 2623/623 (hereinafter, "Underwriters"), by and through undersigned counsel, files this Motion to Dismiss the Counterclaim filed by Defendants, SOLUTIONS RECOVERY CENTER, LLC ("Solutions"), DANIEL J. CALLAHAN, SEAN CALLAHAN, and RICHARD GLASER (collectively the "Solutions Parties"), and in support thereof states as follows:

## BACKGROUND

1.     On or about December 31, 2017, Kipu Systems LLC, a Florida limited liability company, filed a lawsuit in the United States District Court for the Southern District of Florida (hereinafter, the "Underlying Action") against certain defendants, including the Solutions Parties.

2.     The Plaintiff in the Underlying Action, Kipu Systems LLC (hereinafter, "Kipu") alleges that the underlying defendants misappropriated trade secrets and intellectual property

owned by Kipu, and subsequently manufactured and sold an infringing, copycat product that implements the misappropriated intellectual property and infringes upon trademarked names and trade secrets.

3.      Underwriters insure Solutions Recovery Center, LLC under a Miscellaneous Medical Professional Liability, General Liability and Advertising Liability Claims Made and Reported Insurance Policy, Policy No. W15F3F170401, with a Policy Period of June 17, 2017 to June 17, 2018 (the "Policy").

4.      Solutions Parties seek insurance coverage, and specifically a defense, for the above referenced Underlying Action for misappropriation of intellectual property asserted by Kipu. However, the Policy does not provide coverage for the Underlying Action.

5.      Therefore, Underwriters instituted the present action seeking declaratory relief as to its responsibility under the Policy. Specifically, Underwriters seek a declaration that the Policy does not provide insurance coverage, neither a defense nor indemnity, to the Solutions Parties for the Underlying Action.

6.      In that regard, Underwriters filed a complaint for declaratory relief on or about April 16, 2018 [D.E. 1] and filed an amended complaint on or about April 18, 2018 [D.E. 5].

7.      Solutions Parties filed their Answer and Counterclaim on May 21, 2018 [D.E. 20].

8.      Underwriters now move to dismiss the Solutions Parties' counterclaim.

## MEMORANDUM OF LAW

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. A court does not have to accept legal conclusions in the complaint as true. *See id*. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

A motion to dismiss a counterclaim under Fed. R. Civ. P. 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint. *Sotelo v. Interior Glass Design, LLC*, 2017 WL 7796316 at 4 (S.D. Fla. 2017); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 2014 WL 11880964 at 9 (S.D. Fla. 2014). The Federal Rules of Civil Procedure require a complainant to sufficiently allege facts that, when taken as true, support the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678-79. The complainant cannot rely on "an unadorned, the-defendant-harmed-me accusation," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.* at 678. The court is not required to accept as true "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Naked assertions devoid of "further factual enhancement" also will not suffice. *Twombly*, 550 U.S. at 555. Rather, the claimant must assert the factual allegations sufficient to "raise a right to relief above the speculative level." *Id.* at 554.

### A. Solutions Parties' Counterclaim must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

As an initial matter, the Solutions Parties merely assert that certain allegations in the Underlying Action were made against them. However, they fail to allege that those allegations are covered under the Underwriters' Policy and fail to allege the basis for coverage. Accordingly, Underwriters have not been given fair notice of what the Solutions Parties' claim is and the ground upon which it rests. Fed. R. Civ. P. 8(a). Instead, the Solutions Parties merely provide unsupported labels and conclusions, and fail to provide grounds for their entitlement to relief enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. As such, a claim for relief is not plausible and must be dismissed. *Iqbal*, 556 U.S. at 678.

First, the Solutions Parties point to Count I of the Underlying Action. In that regard, the Solutions Parties allege as follows:

> Count I is Violations of Florida's Computer Abuse and Data Recovery Act ("CADRA"), pursuant to Fla. Stat. §668.801-805, against all Defendants (including the <u>Solutions Parties</u>). Kipu alleges that between October 10, 2013 and January 16, 2014, and between September 10, 2015 and October 2015, <u>Dan Callahan</u>, <u>Sean Callahan</u>, and <u>Richard Glaser</u> (among others) logged into the Kipu Electronic Medical Records ("EMR") system to review and misappropriate Kipu's trade secrets, confidential information, and intellectual property…

*Solutions Counterclaim*, ¶ 15(a). Even assuming that Solutions Parties' reading of the Underlying Complaint is correct as to which underlying defendants Count I is asserted against, the Solutions Parties still fail to allege how these allegations create coverage. The reason Solutions

Parties cannot allege that these allegations create coverage is because the Policy creates no such coverage. Although Underwriters assert that there is no coverage, the Solutions Parties claim that there is coverage under the Policy for Advertising Liability, because the Underlying Action clearly does not allege Bodily Injury arising from Professional Liability, Property Damage, or Personal Liability. In fact, the Solutions Parties admit in their Answer as follows: "Defendants admit that Solutions relies on allegations in the Underlying Action Complaint that constitute Advertising Liability against Solutions." *Solutions Ans*. ¶62. Solutions Parties fail to allege that Advertising Liability arises from Count I of the Underlying Action and provide no support for a contention that Underwriters have a duty to defend the Underlying Action.

Regarding Count II of the Underlying Action, the Solutions Parties state as follows:

> Count II is Breach of Contract against <u>Solutions Recovery Center, LLC</u> for allegedly breaching the 2013 License Agreement it entered into with Kipu by allegedly failing to pay eight $1,000 monthly payments…

*Solutions Counterclaim*, ¶ 15(b). Even assuming that Solutions Parties' reading of the Underlying Complaint is correct as to which underlying defendants Count II is asserted against, none of these allegations for Breach of Contract constitute Advertising Liability, and Solutions Parties fail to allege that they constitute Advertising Liability, that they are covered under the Policy, or any basis for such coverage.

Regarding Count III of the Underlying Action, the Solutions Parties state as follows:

> Count III is for Breach of Contract against all Defendants (including the <u>Solutions Parties</u>) for allegedly breaching the January 2014 Kipu Terms of Service by allegedly: engaging in activities that were "not for a legitimate business purpose"; failing to use the Kipu EMR system for site level administration of an addiction treatment facility; reverse engineering the Kipu EMR System; copying workflows and other Kipu intellectual property; and accessing the Kipu EMR System to develop a competing, infringing product…

*Solutions Counterclaim*, ¶ 15(c). Even assuming that Solutions Parties' reading of the Underlying Complaint is correct as to which underlying defendants Count III is asserted against, none of these allegations for Breach of Contract constitute Advertising Liability, and Solutions Parties fail to allege that they constitute Advertising Liability, that they are covered under the Policy, or any basis for such coverage.

Regarding Count IV of the Underlying Action, the Solutions Parties state as follows:

> Count IV is Misappropriation of Trade Secrets – 18 U.S.C. §1836 against all Defendants (including the Solutions Parties). Kipu alleges that Defendants misappropriated Kipu's trade secrets, including the OTO program, the OTO algorithm, Kipu EMR System work flows, and Kipu EMR System architecture…

*Solutions Counterclaim*, ¶ 15(d). Even assuming that Solutions Parties' reading of the Underlying Complaint is correct as to which underlying defendants Count IV is asserted against, none of these allegations for Misappropriation of Trade Secrets constitute Advertising Liability, and Solutions Parties fail to allege that they constitute Advertising Liability, that they are covered under the Underwriters Policy, or any basis for such coverage.

Regarding Count V of the Underlying Action, the Solutions Parties state as follows:

> Count V is for Civil Conspiracy to Commit Trade Secret Theft against Richard Glaser, Sean Callahan, Dan Callahan, Seamus Callahan, Keith Houlihan, Yanko Karkalichev, and Anton Aladzhov. Kipu alleges that these individuals conspired to commit trade secret theft, and that between October 2013 and January 2014, they engaged in 150 unauthorized logins to the Kipu EMR System to allegedly misappropriate Kipu's trade secrets, including the OTO program, the OTO algorithm, Kipu EMR System work flows, and Kipu EMR System architecture. Kipu alleges that in or about September 10, 2015, Sean Callahan and other defendants made 20 unauthorized logins during a two-week period. Kipu alleges that these actions were in furtherance of a conspiracy to steal Kipu's trade secrets and develop a competing product…

Solutions Counterclaim, ¶ 15(e). Even assuming that Solutions Parties' reading of the Underlying Complaint is correct as to which underlying defendants Count V is asserted against, none of these allegations for Civil Conspiracy to Commit Trade Secret Theft constitute Advertising Liability, and Solutions Parties fail to allege that they constitute Advertising Liability, that they are covered under the Policy, or any basis for such coverage. Furthermore, the Policy only potentially covers Richard Glaser, Sean Callahan, and Daniel Callahan as officers of Solutions and to the extent of their duties as such. *Policy*, ¶ II(c). These allegations of Civil Conspiracy to Commit Trade Secret Theft were not within the duties of Richard Glaser, Sean Callahan, and Daniel Callahan as officers of Solutions, and Solutions Parties fail to allege that these allegations were within the duties of Richard Glaser, Sean Callahan, and Daniel Callahan as officers of Solutions.

Regarding Count VI of the Underlying Action, the Solutions Parties state as follows:

> Count VI is for Conversion of Confidential and Proprietary Information against all Defendants (including the <u>Solutions Parties</u>). Kipu alleges that on multiple occasions, Defendants stole and converted Kipu's intellectual property, including without limitation the Kipu EMR System and its underlying components. Kipu alleges that it has suffered the deprivation of its property…

*Solutions Counterclaim*, ¶ 15(f). Even assuming that Solutions Parties' reading of the Underlying Complaint is correct as to which underlying defendants Count VI is asserted against, none of these allegations for Conversion of Confidential and Proprietary Information constitute Advertising Liability, and Solutions Parties fail to allege that they constitute Advertising Liability, that they are covered under the Policy, or any basis for such coverage.

Regarding Count VII of the Underlying Action, the Solutions Parties state as follows:

> Count VII is for Common Law Trespass to Chattels against all Defendants (including the <u>Solutions Parties</u>). Kipu alleges that from

> 2013 to the present, Defendants trespassed upon Kipu's system for
> the purpose of misappropriating intellectual property…

*Solutions Counterclaim*, ¶ 15(g). Even assuming that Solutions Parties' reading of the Underlying Complaint is correct as to which underlying defendants Count VII is asserted against, none of these allegations for Common Law Trespass to Chattels constitute Advertising Liability, and Solutions Parties fail to allege that they constitute Advertising Liability, that they are covered under the Policy, or any basis for such coverage.

Regarding Count VIII of the Underlying Action, the Solutions Parties state as follows:

> Count VIII is Trademark Counterfeiting under 15 U.S.C. §1114 and 1116 against all Defendants (including the <u>Solutions Parties</u>). Kipu asserts that Defendants' use of the term "OTO option" was unauthorized and constitutes the use of a spurious mark that is identical to the OTO Mark, which was federally registered by Kipu on January 24, 2017. Kipu alleges that ZenCharts and Defendants "which own or control ZenCharts are advertising and promoting ZenCharts' competing EMR software, which uses and shows the OTO Mark." Kipu alleges that Defendants' acts constitute trademark counterfeiting in violation of Sections 32(1) and 34(d)(1)(B) of the Lanham Act, 15 U.S.C. § 1114(1) and 1116(d)(1)(B)….

*Solutions Counterclaim*, ¶ 15(h). The Solutions Parties contend that this Count was alleged against all defendants, including the Solutions Parties. However, the Underlying Action and Solutions Parties' counterclaim as reproduced above actually state, "ZenCharts and the <u>Defendants which own or control ZenCharts</u> are advertising and promoting ZenCharts' competing EMR software, which uses and shows the OTO Mark." *Underlying Comp.* ¶ 191; *Solutions Counterclaim*, ¶ 15(h). **Solutions** does not own or control ZenCharts, and to the extent that Daniel Callahan, Sean Callahan and Richard Glaser own and/or control ZenCharts, they do not do so within the scope of their employment within Solutions, as required under the Underwriters Policy. In fact, the Solutions Parties admit in their Answer as follows: "Defendants admit that Solutions

does not own or control ZenCharts." *Solutions Ans.* ¶ 67. In any event, even assuming for argument's sake that this count was alleged against the Solutions Parties, which it was not, the Solutions Parties still fail to allege any basis for coverage under this count.

Regarding Count IX of the Underlying Action, the Solutions Parties state as follows:

> Count IX is for Infringement of United States Trademark Registration under 15 U.S.C. §1114 against all Defendants (including the <u>Solutions Parties</u>). Kipu alleges that: it filed the OTO trademark application on May 20, 2016; on or about September 13, 2016, the USPTO issued an examiner's amendment stating she found no conflicting marks; on October 19, 2016, notice of publication was issued; and on January 24, 2017, the USPTO issued a Trademark Registration to Kipu for the OTO Mark. Kipu alleges that Defendants' "later adopted and wrongful use of the OTO Mark in conjunction with offering a competing line of EMR software . . . to target the same group of customers is likely to cause confusion, mistake or deception as to source, sponsorship, affiliation or authorization by Kipu or alternatively, to destroy the origin-identifying function of Kipu's registered trademark." Kipu alleges that it has suffered and will continue to suffer damage to its business, reputation, and goodwill….

*Solutions Counterclaim*, ¶ 15(i). Even assuming that Solutions Parties' reading of the Underlying Complaint is correct as to which underlying defendants Count IX is asserted against, none of these allegations for Infringement of United States Trademark Registration under 15 U.S.C. §1114 constitute Advertising Liability. To the extent that any of the allegations in this count may be construed as Advertising Liability, same were not made against Solutions or its officers acting within their scope of employment with Solutions, because the entity that allegedly infringed on the Kipu trademark was ZenCharts, which is not an insured, arising out of the ZenCharts system and its use of the OTO Mark. In any event, Solutions Parties fail to allege that any of the allegations contained in this count constitute Advertising Liability, that they are covered under the Policy, or any basis for such coverage.

Regarding Count X of the Underlying Action, the Solutions Parties state as follows:

> Count X is for Federal Unfair Competition – Passing Off, under 15 U.S.C. § 1125 against all Defendants (including the <u>Solutions Parties</u>). Kipu alleges that Defendants have, without authorization, used "Kipu's trade name OTO, as well as associated indicia within the interfaces of its Kipu EMR System." Kipu alleges that Defendants have "used the name 'OTO' and/or 'OTO Option' (the 'Infringing Name') in their competing ZenCharts system – as well as in their related marketing and promotion of their competing EMR software." Kipu alleges that Defendants' use of, "advertising," and "marketing" the "Infringing Name" confuses, misleads, and deceives the consumer into believing Zencharts is associated with Kipu and/or the Kipu EMR System. Kipu alleges that Defendants have used, "in relation to commercial activities," a false designation of origin, or a false or misleading description that is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendants with Kipu…

*Solutions Counterclaim*, ¶ 15(j). Even assuming that Solutions Parties' reading of the Underlying Complaint is correct as to which underlying defendants Count X is asserted against, none of these allegations for Federal Unfair Competition – Passing Off, under 15 U.S.C. § 1125 constitute Advertising Liability. To the extent that any of the allegations in this count may be construed as Advertising Liability, same were not made against Solutions or its officers acting within their scope of employment with Solutions, because same were made against ZenCharts, which is not an insured, arising out of the ZenCharts system and its use of the OTO Mark. See *Underlying Comp*. ¶ 212 ("The Defendants have knowingly and intentionally used the name 'OTO' and/or 'OTO Option' (the 'Infringing Name') in their competing ZenCharts System – as well as in related marketing and promotion of their competing EMR software"). In any event, Solutions Parties fail to allege that any of the allegations contained in this count constitute Advertising Liability, that they are covered under the Policy, or any basis for such coverage.

Regarding Count XI of the Underlying Action, the Solutions Parties state as follows:

> Count XI is for Florida Common Law Unfair Competition against all Defendants (including the <u>Solutions Parties</u>). Kipu alleges that "Defendants' actions regarding the advertising, marketing, offer for sale and sale of EMR software in the drug and alcohol addiction treatment industry constitutes unfair competition and an infringement of Kipu's common law rights in the trade name OTO."

*Solutions Counterclaim*, ¶ 15(k). To the extent that any of the allegations in this count may be construed as Advertising Liability, they were not made against Solutions or its officers acting within their scope of employment with Solutions, because same were made against ZenCharts, which is not an insured, arising out of the ZenCharts system and its use of the OTO Mark. In any event, Solutions Parties fail to allege that any of the allegations contained in this count constitute Advertising Liability, that they are covered under the Policy, or any basis for such coverage.

Regarding Count XII of the Underlying Action, the Solutions Parties state as follows:

> Count XII alleges violation of Florida Deceptive and Unfair Practices Act under Fla. Stat. § 501.204 against all Defendants (including the <u>Solutions Parties</u>). Kipu alleges that Defendants accessed without authorization the Kipu EMR System to misappropriate Kipu's trade secrets. Kipu alleges that Defendants' acts "have been injurious to the public" and were "unfair and deceptive."

*Solutions Counterclaim*, ¶ 15(l). Even assuming that Solutions Parties' reading of the Underlying Complaint is correct as to which underlying defendants Count XII is asserted against, none of these allegations for Florida Deceptive and Unfair Practices Act under Fla. Stat. § 501.204 constitute Advertising Liability, and Solutions Parties fail to allege that they constitute Advertising Liability, that they are covered under the Policy, or any basis for such coverage.

Regarding Count XIII of the Underlying Action, the Solutions Parties state as follows:

> Count XIII is for Tortious Interference with Business Relationships against <u>Sean Callahan</u>, <u>Dan Callahan</u>, <u>Richard Glaser</u>, and

ZenCharts. Kipu alleges that they interfered with Kipu's relationships with its users by using and misappropriating Kipu's technology and trade secrets, "pitching" the ZenCharts EMR System to Kipu's "customers at a low price," employing Kipu's OTO Mark in the ZenCharts System, and soliciting Kipu's users…

*Solutions Counterclaim*, ¶ 15(l). The allegations against Sean Callahan, Daniel Callahan, and Richard Glaser in Count XIII were not made against them with regard to their duties as officers of Solutions. They were made against them with regard to their duties and business dealings within ZenCharts. Regardless, none of these allegations for Tortious Interference with Business Relationships constitute Advertising Liability, and Solutions Parties fail to allege that they constitute Advertising Liability, that the claim was made against Sean Callahan, Daniel Callahan, and Richard Glaser within the scope of their employment with Solutions, that they are covered under the Policy, or any basis for such coverage.

Furthermore, notwithstanding that the allegations in the Underlying Action relied upon by Solutions Parties in their contention for coverage were not made against Solutions, any allegations that the Solutions Parties attempt to construe as Advertising Liability against Solutions are excluded from coverage by the following exclusions and limiting Policy provisions: (1) Exclusion IV.2.(n) of the Policy, which excludes coverage for "any Claim relating to Advertising Liability arising out of:…infringement of patent, trademark, service mark, and trade name...; (2) Exclusion IV.3.(a) of the Policy, which excludes coverage for "any Claim made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in the Declarations, which is owned by any Insured…;" (3) Exclusion IV.3.(d) of the Policy, which excludes coverage for "any claim or circumstance that might lead to a claim known to any insured prior to the inception of this Policy and not disclosed to the Underwriters at inception;" (4) Exclusion IV.3.(u) of the Policy, which excludes coverage

for any "Claim based upon or arising out of any Insured gaining any profit, remuneration or advantage to which such Insured was not legally entitled;" (5) Exclusion IV.3.(y) of the Policy, which excludes coverage for Claims "based upon or arising out of any actual or alleged violation of any federal, state, or local anti-trust, restraint of trade, unfair competition, or price fixing law, unfair or deceptive trade practices, or consumer protection any rules or regulations promulgated thereunder;" (6) the Retroactive Date of the Policy; and (7) the Retroactive Limitations Clause of the Policy. The Solutions Parties fail to allege that the above mentioned exclusions and limiting provisions do not apply, and fail to provide any factual basis for such a contention.

In sum, Solutions Parties provide no allegations or factual basis to support their contention that the Policy provides coverage for the Solutions Parties for the Underlying Action. Therefore, the counterclaim must be dismissed.

**B. Count I: Declaratory Judgment must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.**

In Count I: Declaratory Judgment of the counterclaim, the Solutions Parties seek a declaration that Underwriters owe the Solutions Parties a duty to defend the Underlying Action. In that regard, the Solutions Parties reproduce the general portions of the Policy that state that Underwriters will provide a defense for Solutions for Claims covered by the Policy. *Counterclaim*, ¶ 22-23. However, they fail to point to any portion of the Policy that specifically creates such coverage for the allegations in the Underlying Action. *Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co.,* 2012 WL 1416428 at 2-3 (S.D. Fla. 2012) citing *Tobon v. American Sec. Ins. Co.,* 2007 WL 1796250 at 2 (S.D. Fla 2007) (dismissing declaratory relief claim that "does not identify any provision of the insurance contract in doubt and in need of construction"). The Solutions

Parties also fail to mention any allegation in the Underlying Action that triggers coverage under the Policy.

The Solutions Parties deny the allegations in the Underlying Action, *Counterclaim*, ¶ 24, which is irrelevant to a determination of coverage. An insurer's duty to defend depends solely on the allegations in the complaint filed against the insured. *Mid-Continent Cas. Co. v. Adams Homes of Northwest Florida Inc.,* 2018 WL 834896 at 2 (11th Cir. 2018). The insurer must defend when the complaint alleges facts that fairly and potentially bring the suit within coverage. *Id.* The insurer's duty to defend is determined solely from the allegations in the complaint against insured, not by true facts of cause of action against insured, insured's version of facts, or insured's defenses. *Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n, Inc.,* 263 F. Supp. 3d 1266 (S.D. Fla. 2016), *aff'd,* 2017 WL 6616690 (11th Cir. 2017). Therefore, Solutions Parties' denial of the allegations in the Underlying Action is of no consequence to a determination of coverage where the Underlying Action complaint does not make any allegations that bring the claim into coverage under the Policy.

The Solutions Parties rely on certain case law which only helps Underwriters' position. *Counterclaim,* ¶ 26. To summarize, the Solutions Parties cite to cases that stand for the propositions that the duty to defend arises when the Underlying Action contains allegations that could be covered; that if the Underlying Action alleges facts partially within and partially outside of coverage, Underwriters must defend; and that courts look to the allegations in the complaint to determine potential coverage. *Counterclaim,* ¶ 26. However, the Solutions Parties fail to allege or provide any factual support for any of the allegations in the Underlying Action potentially falling under coverage. They do not point to any allegations in the Underlying Action, to any Policy provision that may cover such allegations, or to any of the exclusions relied upon by Underwriters

as inapplicable. On the contrary, none of the allegations in the Underlying Action implicate coverage under the Policy and/or are excluded under Policy exclusions and/or limiting Policy provisions, and therefore Underwriters do not owe a duty to defend.

The Solutions Parties claim that "The Kipu Complaint alleges a covered claim for Personal Injury as defined in the Policy against the Solutions Parties." *Counterclaim*, ¶ 27. However, the Solutions Parties fail to allege any allegation in the Underlying Complaint or any factual basis at all for this contention. They do not even mention which provision of the Policy's definition of Personal Liability is implicated. The Policy defines Personal Injury as (1) Bodily Injury; (2) false arrest, false imprisonment, wrongful eviction, detention or malicious prosecution; (3) libel, slander, defamation of character or invasion of right of privacy, unless arising out of any advertising activities; or (4) wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor. *Policy*, Pg. 16/25. Inarguably, none of the allegations in the Underlying Action implicate Personal Injury coverage, which is the reason Solutions Parties could not point to any allegation or factual basis that may implicate this portion of the Policy.

Similarly, the Solutions Parties claim that "The Kipu Complaint alleges a covered claim for Advertising Liability as defined in the Policy against the Solutions Parties." *Counterclaim*, ¶ 28. Again, Solutions Parties fail to so much as mention any allegation or factual basis for this contention. They also do not point to the Policy language that they contend creates coverage. As discussed above and in the Underwriters' amended complaint, to the extent that any allegation in the Underlying Action may potentially be construed as Advertising Liability against Solutions, same is excluded by Policy exclusions and/or Policy limiting provisions.

Moreover, the counterclaim alleges that "The Policy does not exclude the covered claims made against the Solutions Parties." *Counterclaim*, ¶ 29. However, the Solutions Parties fail to discuss any "covered claim" in the Underlying Action, the applicability or supposed inapplicability of the exclusions relied upon by Underwriters, or any factual basis for their contention of coverage. This is so because the Policy clearly excludes such claims that the Solutions Parties contend are covered.

With regard to the Retroactive Date, the Solutions Parties contend that "The Kipu Complaint alleges acts by the Solutions Parties after the applicable Retroactive Date." *Counterclaim*, ¶ 30. However, they fail to allege which acts they contend occurred after the applicable Retroactive Date or how such acts bring the claim under the Policy's coverage. Any acts that occurred after the retroactive date are not covered under any insuring agreement of the Policy and/or are excluded under the Policy, as discussed above. Furthermore, the Policy defines "Accident" as "an event or happening, including continuous or repeated exposure to substantially the same general harmful conditions, which involves one or more persons or entities, and which results in Personal Injury, Property Damage or Advertising Liability to such persons or entities." Therefore, that the alleged acts began and/or occurred before the retroactive date means that the later conduct are the same "Accident" as a continuation of substantially the same general harmful conditions, and are therefore barred under the retroactive date. Solutions Parties fail to provide any support for any act not being barred by the retroactive date and the retroactive limitations provision of the Policy.

In addition, the Solutions Parties claim that "Solutions Parties timely requested a defense to the Kipu Complaint, which was rejected by Underwriters." *Counterclaim*, ¶ 31. However, timeliness in requesting a defense is irrelevant to the determination of coverage. As described

above, coverage and duty to defend are determined by the allegations in the complaint against the insured. *Mid-Continent*, 2018 WL 834896 at 2.

Finally, Solutions Parties assert that Underwriters owe a duty to defend because the "Kipu Complaint asserts covered claims that are not subject to any exclusions in the Policy." *Counterclaim*, ¶ 32. However, as discussed above, Solutions Parties do not identify any "covered claims" nor do they provide any support whatsoever that the exclusions relied upon by Underwriters do not apply.

In sum, the Solutions Parties fail to provide any allegations or factual support for their demand for a declaration that the Policy provides a duty to defend, and therefore, Count I must be dismissed for failure to state a claim.

### C. <u>Count I: Declaratory Judgment must be dismissed as duplicative of Count II: Breach of Contract</u>

A court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim. *Ministerio Evangelistico Int'l v. United Specialty Insurance Company*, 2017 WL 1363344 at 1 (S.D. Fla. 2017) citing *Miami Yacht Charters*, 2012 WL 1416428; *Fernando Grinberg Trust Success Int'l Props, LLC v. Scottsdale Ins. Co.* 2010 WL 2510662 (S.D. Fla. 2010) (dismissing count for declaratory judgment because it involved the same factual dispute as the breach of contract claim). The court in *Ministerio Evangelistico* held:

> Citing no less than eight supporting cases from the Southern District of Florida, United first argues that the declaratory relief claim should be dismissed because it is duplicative and will be resolved by the breach of contract claim. This Court agrees. If the determination of Ministerio's breach of contract claim involves the same factual dispute as the declaratory relief claim, then Ministerio "will be able to secure full, adequate and complete relief through the breach of contract claim" and consequently "the declaratory relief

action must be dismissed." *See Fernando Grinberg*, 2010 U.S. Dist. LEXIS 69229, at \*4, 2010 WL 2510662.

*Ministerio Evangelistico* 2017 WL 1363344 at 2. *See also Berkower  v. USAA Cas. Ins.*, 2016 WL 4574919 (S.D. Fla. 2016) (dismissing similar declaratory relief claim as duplicative of breach of contract claim). In the present case, the Solutions Parties' claim for declaratory judgment seeks adjudication on the same merits as the breach of contract claim, arising out of the same factual dispute and circumstances regarding Underwriters' coverage of the Underlying Action. Therefore, the Solutions Parties' claim for declaratory judgment must be dismissed as duplicative.

### D. Count II: Breach of Contract must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Similar to Count I, Count II: Breach of Contract of Solutions Parties' counterclaim is entirely devoid of any factual support whatsoever and must be dismissed.

Solutions Parties again assert that it timely tendered the Underlying Action to Underwriters, which is of no consequence to a determination of duty to defend. *Counterclaim*, ¶ 34. Also, Solutions Parties claim that "Underwriters had a contractual duty to defend the Solutions Parties in connection with the Kipu Underlying Action." *Counterclaim*, ¶ 35. However, they do not mention any provision in the Policy which provides such duty to defend or any allegation in the Underlying Action which would trigger such a duty.

Solutions Parties further claim that "Underwriters breached its contractual duty to defend when it refused to defend the Solutions Parties in the Kipu Underlying Action." *Counterclaim*, ¶ 37. However, they fail to even plead a contractual duty to defend, and therefore their groundless and unsupported contention of a breach of such a contractual duty must fail.

CASE NO. 0:18-CV-60839-CMA

In their continued general recitation of the breach of contract elements, Solutions Parties allege that "Solutions Parties have been damaged by Underwriters' breach of contract." *Counterclaim*, ¶ 38. Solutions Parties fail to allege any damages.

Solutions Parties fail to plead any factual support for its contention of breach of contract by Underwriters. Solutions Parties' formulaic recitation of the elements of a cause of action will not do, and their naked assertions devoid of "further factual enhancement" also will not suffice. *Twombly*, 550 U.S. at 555. Accordingly, Count II of the Counterclaim must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff, Underwriters respectfully request that the this Court grant its Motion to Dismiss Defendants, Solutions Parties' counterclaim against Underwriters.

Respectfully submitted,

/s/  Steven S. Cula
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Steven S. Cula
Fla. Bar No. 1002949
Email: scula@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:   (954) 377-8101
***Counsel for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 13, 2018, the foregoing Motion to Dismiss was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/\_\_\_\_Steven S. Cula\_\_\_\_

Rory Eric Jurman
Steven S. Cula

## <u>SERVICE LIST</u>

### CASE NO. 0:18-CV-60839-CMA

Geremy W. Gregory
(FL Bar No. 102645)
BALCH & BINGHAM LLP
ggregory@balch.com
841 Prudential Drive, Suite 1400
Jacksonville, Florida 32207
Telephone: (904) 348-6875
Facsimile: (904) 396-9001
***Counsel for Defendants***

Jeremiah M. Glassford (ASB #3856N10Z)
(Admitted *pro hac vice*)
BALCH & BINGHAM LLP
jglassford@balch.com
1901 Sixth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 226-8738
Facsimile: (205) 226-8799
***Counsel for Defendants***

Walter H. Boone (MSB #8651)
(Admitted *pro hac vice*)
BALCH & BINGHAM LLP
wboone@balch.com
188 East Capital Street, Suite 1400
P.O. Box 22587
Jackson, Mississippi 39225-2587
Telephone: (601) 965-8179
Facsimile: (888) 956-9542
***Counsel for Defendants***