## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, SYNDICATES 2623/623

      Plaintiff/Counterclaim-Defendant,

v.                                  Case No. 0:18-CV-60839-CMA

SOLUTIONS RECOVERY CENTER, LLC,
DANIEL J. CALLAHAN,
SEAN CALLAHAN, and
RICHARD GLASER,

      Defendants/Counterclaim-Plaintiffs,
_____

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
### AND INCORPORATED MEMORANDUM OF LAW

Defendants/Counterclaim-Plaintiffs Solutions Recovery Center LLC ("Solutions"), Daniel J. Callahan, Sean Callahan, and Richard Glaser (collectively the "Solutions Parties")[1] move for summary judgment on the claims asserted by and the counterclaims asserted against Plaintiff/Counterclaim-Defendant, Certain Underwriters at Lloyd's London, Syndicates 2623/623 ("Underwriters") as follows:

### INTRODUCTION

The Solutions Parties seek a declaration that Underwriters is required to defend them against a meritless lawsuit (the "Kipu Action") filed by Kipu Systems LLC ("Kipu") and alleging—among other things—copyright and trade dress infringement. The Solutions Parties also seek a determination that Underwriters breached its insurance contract when it declined to defend them. Not surprisingly, in its Complaint, Underwriters seeks a contra declaration that would allow it to avoid its obligations under the insurance policy issued by Underwriters (the

_____

[1] The Solutions Parties include only those against whom Underwrites filed suit, but in no way limits the Defendants in the Kipu Action who are covered under the Policy. When the duty to defend is confirmed by the Court, the Underwriters must defend all Defendants who are insureds under the Policy, not just the ones they named in this declaratory judgment action.

"Policy")[2] based on a host of exclusions which it argues removes the Kipu Action from coverage. But Underwriters' arguments against coverage either (1) conflict with the plain language of the policy, (2) are based on ambiguous provisions that must be construed in favor of the Solutions Parties, or (3) ignore the fact that, while some parts of the Kipu Action may be excluded under the Policy, others are not (which means Underwriters must defend the entire suit). For the reasons that follow, this Court should enter summary judgment against Underwriters and in favor of the Solutions Parties. That judgment should require Underwriters to defend the Kipu Action with counsel selected by the Solutions Parties, reimburse the Solutions Parties for all defense costs to date, and undertake all obligations consistent with its duty to defend.

## STANDARD OF REVIEW

"Summary judgment shall be rendered if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Lahmeyer v. United States*, No. 13-23288-CIV, 2014 WL 3973152, at *1 (S.D. Fla. July 25, 2014) (Altonaga, J.). Here, the Parties dispute the duty to defend. While the Parties may disagree about the Court's ability to consider evidence outside the pleadings in resolving the duty to defend, this Court does not need to reach that issue because the allegations of Kipu's pleadings have triggered that duty. *E.S.Y., Inc. v. Scottsdale Ins. Co.*, 139 F. Supp. 3d 1341, 1351–52 (S.D. Fla. 2015) (Altonaga, J.) (determining that an insurer had a duty to defend a claim for trade dress infringement based solely off the allegations of the complaint).

There are two pleadings in the Kipu Action that are relevant to the resolution of this Motion—a complaint and an amended complaint. Kipu filed its Complaint (the "Kipu Complaint") in December 2017. Kipu filed an Amended Complaint on October 10, 2018 (the "Kipu Amended Complaint"). Under Florida law, Underwriters' duty to defend *from that date forward* must be determined based off the allegations of the Kipu Amended Complaint. *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (explaining that

---

[2] A true and correct copy of the Policy is attached to Underwriters' Amended Complaint as Exhibit B (Doc. 5-2). As explained in footnote 2 to the Solutions Parties Statement of Undisputed Material Facts submitted contemporaneously herewith, the Policy consists of a standard insuring agreement as well as a declarations page and several endorsements. The pagination of these documents is not continuous. To avoid confusion, the Solutions Parties will hereinafter cite to the Policy using the citation format "Policy at __" and provide a pincite to the PDF page assigned to docket entry 5-2.

"[c]overage is determined from examining the most recent amended pleading, not the original pleading"); *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 815 (Fla. Dist. Ct. App. 1985) (same). But the Solutions Parties also seek damages resulting from Underwriters' breach of contract in refusing to defend the Kipu Action since December 2017. For the most part, the allegations of the two pleadings are the same. Because both the Kipu Complaint and the Kipu Amended Complaint are potentially relevant, the Solutions Parties will provide pincites to both pleadings. Unless otherwise noted, all references in this Motion to the "Kipu Amended Complaint" are also intended to refer to the Kipu Complaint.

## ARGUMENT

### I.     GENERAL CONSTRUCTION RULES FAVORING THE DUTY TO DEFEND.

Underwriters' duty to defend is broadly construed under Florida law. "[An] insurer must defend if the allegations in the complaint could bring the insured within the policy provisions of coverage. If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit." *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299 (Fla. Dist. Ct. App. 1992). "If the allegations in the complaint create potential coverage under the policy, this is sufficient to trigger the . . . duty to defend." *Underwriters at Lloyd's London v. STD Enterprises, Inc.*, 395 F.Supp.2d 1142, 1146 (M.D. Fla. 2005). "If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." *Baron Oil*, 470 So. 2d at 814.

Florida has developed special rules applicable to insurance contracts which weigh in favor of the Solutions' Parties and against Underwriters. While "[i]nsurance contracts must be construed in accordance with [their] plain language," *Evanston Ins. Co. v. AB Knight Const., LLC*, No. 10-22388-CIV, 2011 WL 11165483, at *2 (S.D. Fla. Mar. 10, 2011) (Altonaga, J.), the law also recognizes that such contracts are written on standardized forms drafted by the insurance company. Thus, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous and will be interpreted in favor of the insured and strictly against the insurer." *Id.*

Finally, the Kipu Action and the Policy are to be construed liberally, and any doubt about coverage for the Kipu Action should be resolved to favor the duty to defend. This Court has recognized that "[d]oubts as to whether a duty to defend exists are resolved in favor of

the insured, and exclusionary clauses in insurance contracts are to be construed liberally in favor of the insured." *E.S.Y., Inc.*, 139 F. Supp. 3d at 1352. Perhaps more importantly, and as this Court has recognized, "***the underlying complaint is not read strictly***: an insurer must defend a lawsuit against its insured if the underlying complaint, when fairly read, alleges facts which create potential coverage under [the] policy." *Id.* (internal quotation marks and citation omitted) (emphasis added). "[T]he theories advanced and labels used in a complaint are subordinate to the facts alleged for the purpose of determining the duty to defend." *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1145 (11th Cir. 2011).

## II.   THE KIPU AMENDED COMPLAINT ALLEGES COPYRIGHT AND TRADE DRESS INFRINGEMENT TRIGGERING UNDERWRITERS' DUTY TO DEFEND.

Underwriters agreed to defend and indemnify the Solutions Parties for certain types of Claims, including Claims for "Advertising Liability." (Policy at 28.) The Policy defines "Advertising Liability" as an "injury arising out of," among other things, "(2) infringement of copyright, title slogan, trade dress, or advertising idea," and "committed in the course of the Insured's advertising activities." (Policy at 41.)

The Kipu Amended Complaint alleges facts that would support a claim for infringement of a copyright, title slogan, trade dress or advertising idea, and then also alleges that Kipu suffered an advertising injury as a direct result of that infringement.[3] The Kipu Action alleges an unambiguous infringement of a copyright—an expressly included *and unexcluded* claim under the Policy. In Paragraph 9 of its amended complaint, Kipu alleges:

> Kipu also owns United States Copyright Registration No. TX0008280027 entitled 'Kipu EMR' having an effective date of December 22, 2016 (listing a first publication date of April 27, 2012).

(Kipu Am. Compl., ¶ 9.) Then, in multiple paragraphs thereafter, Kipu alleges that the Solutions Parties violated that copyright by creating a "copycat" EMR system based on the copyrighted work,[4] the Solutions Parties breached the Kipu Contract enforcing those copyright protections,[5] and Kipu suffered and is suffering irreparable harm as a result of that ongoing infringement.[6]

---

[3] "Advertising injury is the misappropriation of another's advertising idea or concept." *Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192 (3d Cir. 2004) (citing *Green-Mach. Corp. v. Zurich-American Ins.*, 313 F.3d 837, 840 (3d Cir. 2002)).

[4] (*See* Kipu Am. Compl. ¶ 46 (Only one reason why Solutions would access Kipu system that many times, "to create a copycat version of Kipu's proprietary EMR system"); ¶ 15

The Kipu Action also repeatedly alleges the Solutions Parties advertised and marketed a competing product to Kipu's target audience and that they did so in a manner "likely to cause confusion, mistake, or deception" amongst customers.[7] In fact, one specifically alleged injury to Kipu is the loss of prospective customers who might be misled by the Solutions Parties' sales techniques and marketing strategy in pushing its own product.[8]

The Eleventh Circuit analyzed a very similar set of issues in *Hyman v. Nationwide Mut. Fire Ins. Co.*, and determined that an insurer's duty to defend was triggered because of the

---

(Solutions' plan was to "create a copycat EMR product . . . ."); ¶ 256 ("[t]hese illegitimate activites include, without limitation, copying work flows and other Kipu intellectual property, and exploiting the Kipu EMR System to develop a competing, infringing product."); ¶ 17–18 (alleging that Sean Callahan and Glaser attempted "to mimic the overall look-and-feel of the Kipu EMR System"); Kipu Compl., ¶¶ 37, 47, 91–92.)

[5] (*See* Kipu Am. Compl., ¶ 153 ("These illegitimate activities include, without limitation, reverse engineering of the Kipu EMR System, copying work flows and other Kipu intellectual property, and accessing the Kipu EMR System to develop a competing, infringing product."); Kipu Compl., ¶ 148.)

[6] (*See* Kipu Am. Compl., ¶ 97 ("Kipu is suffering . . . irreparable harm unless the Defendants are . . . enjoined from the foregoing infringing and unlawful acts. Kipu has been damaged considerably by the foregoing actions and is entitled to fair and appropriate financial compensation . . . through the creation and later sale of the copycat, infringing ZenCharts System."); Kipu Compl, ¶ 92.)

[7] (*See* Kipu Compl. ¶ 204 ("The Defendants' later . . . use of the . . . competing line of EMR software used in the drug and alcohol addiction treatment industry, to the same target group of customers, is likely to cause confusion, mistake or deception as to source, sponsorship, affiliation, or authorization by Kipu"); *see also* Kipu Am. Compl., ¶ 47 ("At the same time the Solutions Recovery, Glaser, Dan Callahan, Sean Callahan, and Karkalichev were logging into the Kipu EMR System, they began developing the competing ZenCharts system. "); ¶ 195 (the Solutions Parties Glaser, Dan Callahan, and Sean Callahan "have caused and/or are likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of ZenCharts' EMR software offerings . . . ."); ¶ 221 (Glaser, Dan Callahan, Sean Callahan, among others, "have used and continue to use, in relation to commercial activities, a false designation of origin, or a false or misleading description that is likely to cause confusion, and to cause mistake, and to deceive, as to the affiliation, connection or association of ZenCharts System with Kipu."); ¶ 256 (alleging that Solutions took actions to "develop a competing, infringing product"); *see also* Kipu Am. Compl., ¶¶ 9, 17–18, 218–19.)

[8] (*See* Kipu Compl. ¶ 213 ("The Defendants' use of the Infringing Name suggests to relevant and prospective customers seeking EMR software…that the ZenCharts System is affiliated, sponsored, endorsed, licensed or related to…the Kipu EMR System…when it is not."); ¶ 214 ("Defendants' advertising and marketing of its misappropriated software under the Infringing Name all leads to the suggestion that there is some affiliation, endorsement, license or relationship between ZenCharts and Kipu, when there is not."); Kipu Am. Compl., ¶¶ 221, 256.)

insured's alleged infringement of a competitor's "trade dress."[9] 304 F.3d 1179, 1189 (11th Cir. 2002). The Court analyzed the facts of the underlying action which concerned the design, marketing and advertising of a particular type of outdoor plastic light. *Id.* at 1183. While the underlying suit alleged "direct patent infringement, indirect or contributory infringement and unfair competition in violation of the Lanham Act,"[10] the action also specifically alleged that Double R, the defendant insured, used model numbers "that were confusingly similar to Inter-Global's (the underlying plaintiff) numbers" and that the artwork used in Double R's advertisements w[as] "confusingly similar" to the artwork used by Inter-Global. *Id.* at 1191. The Court held that these allegations constituted a claim for infringement of "trade dress" and "misappropriation of advertising ideas" under the terms of the policy. *Id.* Finally, the Court concluded that Double R's misappropriation of the advertising idea had caused an alleged advertising injury to Inter-Global because it created alleged confusion for customers. *Id.* at 1192.[11]

In *E.S.Y., Inc. v. Scottsdale Insurance Co.*, this Court held that an insurer owed a duty to defend where the underlying action alleged a litany of claims mirroring the claims asserted in this case.[12] *See* 139 F.Supp. 3d at 1349. The policy at issue, just as the Policy involved here, provided coverage for an advertising injury resulting from "infring[ement] upon another's copyright, trade dress or slogan in [the insured's] advertisement." *Id.* The underlying plaintiff alleged that the insured infringed on its advertising idea by utilizing "hang tags" on its clothing products that were deceptively and confusingly similar to its own. The Court concluded that the "hang tags" attached to the insured's clothing products were advertisements within the meaning of the policy and that the infringing content on the hang tags caused an alleged advertising injury

---

[9] Here, Section I.A.2. of the Policy specifically, and expressly, provides coverage for a "trade dress" based injury.

[10] The Kipu Action also alleges a very similar collection of uncovered claims.

[11] Just like Kipu here, "Inter-Global claimed specifically that it had suffered an injury as a result of the promotion and advertising of Double R's products as identified by the similar model numbers. It argued that by using Inter-Global's artwork and model numbers in advertising, promoting, or marketing Double R's products, Double R likely confused or deceived the general public and purchasers." *Id.*

[12] Specifically, the underlying plaintiff alleged: federal copyright infringement, federal vicarious and/or contributory copyright infringement, federal unfair competition, federal false designation or origin, federal trademark infringement, Florida statutory trademark infringement, and Florida common law unfair competition. *See E.S.Y., Inc.*, 139 F. Supp. 3d at 1347.

to the underlying plaintiff. The advertising injury triggered a duty to defend because the underlying plaintiff alleged the insured's "hang tangs caused harm to Exist by creating confusion among Exist's customers as to Exist's hang tags and [the insured]'s." *Id.* at 1357.[13]

This Court again reached a very similar conclusion in *Adolfo House Distributing Corp.*, v. *Travelers Property and Casualty Co*. 165 F.Supp. 2d 1332 (S.D. Fla. 2001). There, the policy provided coverage for "advertising injuries" arising out of alleged "misappropriation of advertising ideas" and, as in the Policy in this case, the "infringement of copyright, title or slogan." This Court concluded that the policy was sufficiently triggered where the insured, Adolfo House, was alleged to have "misappropriated and traded on the reputation and good will of Razac[, the plaintiff in the underlying action,] through conduct in advertising and promoting their product in a manner which states or reasonably implies that Adolfo House's product is the real Razac or an affiliate of Razac and consequently caused and is likely to continue to cause confusion, mistake and deception as to the affiliation, connection or association of Adolfo House with Razac." *Id.* at 1340, *see also Bear Wolf, Inc. v. Hartford Ins. Co. of the Se.*, 819 So. 2d 818 (Fla. Dist. Ct. App. 2002) ("the production and distribution of Harrington's copyrighted product constituted copyright and trade dress infringement" and the displaying of the same at a trade show was sufficient to allege an advertising injury and trigger the insurer's duty to defend).

According to the Kipu Amended Complaint, the Solutions Parties committed copyright and trade dress infringement, which caused advertising injury including alleged confusion amongst Kipu's existing and prospective customers. Those claims are expressly covered by the Policy.

Furthermore, the fact that Kipu chose not to label a particular claim or allegation as "copyright infringement" or "trade dress infringement" is not dispositive. As the Eleventh Circuit, held in *Trailer Bridge, Inc., supra,* the facts alleged, not the plaintiff's labels, determine the duty to defend. *See* 657 F.3d at 1145; *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) ("The court cannot speculate as to the nature or merit of the claims; it may only look to the factual allegations of the underlying complaint. If

---

[13] The Court also noted "the causation requirement [was] satisfied for the additional reason the copyright infringement claim is premised not only on the sale of products bearing the Liquid Energy Shield Mark, which infringes the allegedly copyright-protected Exist Shield Design, but also on the particular display of the Liquid Energy Shield Mark on Plaintiffs' hang tags (*i.e.* Plaintiffs' advertisements)." *E.S.Y., Inc.*, 139 F. Supp. 3d at 1357.

the facts alleged show any basis for imposing liability upon the insured that falls within policy coverage, the insurer has a duty to defend.") (applying Florida law).

Finally, while Underwriters contends various exclusions, they admit in their denial letter that the allegations are sufficient to at least arguably trigger coverage—which is all that is necessary for a preliminary finding of coverage. (*See* Doc. 33-1, Letter from Rory Jurman to Nicholas Novack dated April 16, 2013 at 13 ("Though the Complaint contains allegations that may otherwise qualify as Advertising Liability . . . .").) Because the Kipu Amended Complaint alleges facts that would support a claim for copyright and trade dress infringement, Underwriter's duty to defend has been triggered.

### III. UNDERWRITERS CANNOT MEET ITS BURDEN TO SHOW THAT THE ALLEGATIONS IN THE KIPU AMENDED COMPLAINT ARE SOLELY AND ENTIRELY WITHIN ANY OF THE POLICY'S EXCLUSIONS.

As explained above, Kipu has alleged a claim for copyright and trade dress infringement falling within the Policy's coverage for "Advertising Liability." Thus, in order to avoid its duty to defend, Underwriters must show that an exclusion unambiguously precludes coverage. In their denial and letter and again in their Complaint, Underwriters raised a number of exclusions which they claimed applied, but the claims in the Kipu Action are not solely and entirely within any of those exclusions. As the Eleventh Circuit has explained, "when an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation. Exclusionary clauses are generally disfavored." *Hartford Accident & Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (applying Florida law); *see Evanston Ins. Co. v. Gaddis Corp.*, 145 F.Supp. 3d 1140, 1147 (S.D. Fla. 2015) (same). Furthermore, "exclusionary clauses in liability insurance policies are construed liberally in favor of the insured and strictly against the insurer." *Hartford Casualty Ins. Co. v. Conrad & Scherer LLP*, No. 15-cv-61360, 2015 WL 13260391, *3 (S.D. Fla. Dec. 17, 2015).

Underwriters cannot show that Kipu's covered claims for copyright and trade dress infringement are solely and entirely within the Policy's exclusions.

A.   **The Exclusion For "Infringement Of Patent, Trademark, Service Mark And Trade Name" Claims Does Not Apply.**

Section IV (2)(n)(2) of the Policy carves out certain infringement-based injuries from the Policy's general coverage for Advertising Liability. Specifically, the following are not covered by the Policy:

> (2) Infringement of patent, trademark, service mark, and trade name, other than titles or slogans by use thereof on or in connection with goods, products or services sold, offered for sale or advertised . . . .

(Policy at 34.)

The exclusion, however, does not swallow the whole coverage, and exclude all coverage for Advertising Injury. For example, while the exclusion precludes coverage for various types of "infringement" (patent, trademark, service mark, etc.), it does not preclude coverage for an allegation of copyright infringement, trade dress infringement or advertising ideas – all of which are expressly included in the Policy's coverage for "Advertising Liability." A side-by-side comparison of the definition of "Advertising Liability" and the language in exclusion Section IV(2)(n)(2) very clearly shows that the exclusions leaves much of Advertising Injury covered:

| ADVERTISING LIABILITY: COVERED | SPECIFIC INFRINGEMENT CLAIMS: EXCLUDED |
|---|---|
| "infringement of copyright, title slogan, trade dress, or advertising idea" | "infringement of patent trademark, service mark, and trade name, other than titles or slogans by use thereof on or in connections with goods, products or services sold, offered for sale or advertised" |

As discussed above, the Kipu Action specifically alleges covered copyright infringement and liability against the Solutions Parties, (*see* Kipu Compl., ¶¶ 91–92; Kipu Am. Compl., ¶¶ 96–97), and also specifically alleges covered trade dress infringement and advertising liabilities within the Policy's coverage, (*see* Kipu Compl., ¶ 213–214; Kipu Am. Compl., ¶¶ 46, 213, 221, 256). While the Kipu Action also alleges infringement of the OTO mark (which would arguably be excluded under the trademark exclusion referenced above), the Underwriters cannot refuse to defend the Solutions Parties against all claims in the Kipu Action simply because covered claims are accompanied by excluded claims. *See Mactown, Inc. v. Continental Ins. Co.*, 716 So. 2d 289, 292 (Fla. Dist. Ct. App. 1998) ("Under Florida law, where part of the complaint falls within the scope of the insured's coverage, and part of it does not, the insurer must defend against the entire complaint . . . ."). Because there are covered and unexcluded infringement-

9

based claims, the exclusion for "infringement of patent, trademark, service mark and trade name" injuries does not relieve Underwriters of its duty to defend.

**B.      Neither the Known-Claims Exclusion Nor Retroactive Limitations Clause Bar Coverage.**

The Known-Claims Exclusion and the Retroactive Limitations Clause generally exclude claims known to the insured prior to the inception of the Policy. (*See* Policy at 34 (excluding claims "arising out of any circumstance or occurrence *known* to the **Insured** prior to the inception hereof and not disclosed to the Underwriters at inception.") (some emphasis added); *id.* at 12 (excluding "any **Claim** or circumstance which might lead to a **Claim** *known* to any Insured prior to the inception of this Policy and not disclosed to the Underwriters at inception") (some emphasis added).)[14] Accordingly, these provisions only exclude coverage if Solutions subjectively and actually "knew" that a claim would be made. This question is almost always a question of fact that cannot be conclusively determined at the outset. *See* 7 Couch on Ins. § 102:9 ("Whether the evidence indicates that the probability of loss was sufficiently high to invoke [the exclusion for known losses] is ordinarily a question of fact.").

*Boran Craig Barber Homes, Inc. v. Mid-Continent Casualty Co.* illustrates how difficult it is to establish actual knowledge of a claim, especially at this procedural juncture. In that case, a homebuilder sued its insurer requesting indemnification for water damage caused by faulty construction. No. 2:06-CV-89, 2009 WL 10670850, at *4 (M.D. Fla. Feb. 19, 2009). There was no dispute that the contractor had discovered the faulty construction prior to the policy period, that it had made multiple attempts to repair the faulty construction, and that none of these facts were disclosed to the insurer. The policy contained an exclusion for property damage when the "insured or authorized employee knew, prior to the policy period, that the . . . property damage [had] occurred." *Id.* at *4. After considering Florida law and the law of other states, the Court held property damage is only "known" when: "the insured ha[s] actual knowledge of a loss or where there was a substantial probability [that] the loss would occur." *Id.* Applying this standard, the Court held that there was a factual dispute about whether the builder "knew" that it was likely to have to make additional repairs to the home at the time the policy was purchased or

---

[14] Certain terms in the Policy appear in **bold** because they are specifically defined in the definitions section of the Policy and, thus, have "special meaning." (Policy at 28.) In quoting the Policy, the Solutions Parties have retained the bolded terms.

whether the builder honestly believed that its repairs had fixed the problem. *Id.* The Court then denied the insurer's motion *for summary judgment*.

There is no legitimate basis to conclude that the Solutions Parties knew of any circumstance or condition which would result in the claims raised in the Kipu Action. The Kipu Amended Complaint does not allege facts establishing that the Solutions Parties "knew" a claim for copyright or trade dress infringement was substantially certain to occur at the time Solutions purchased the Policy. At most, Kipu's pleadings rely entirely on speculation to infer that the Solutions' Parties copied the Kipu EMR system, but those inferences and legal conclusions are simply false.[15] In the absence of facts conclusively determining that the Solutions Parties knew a claim was likely to occur, Underwriters cannot avoid its duties under the Policy.[16] Underwriters promised to defend against "any Claim . . . even if any of the allegations of the Claim are groundless, false, or fraudulent" (Policy at 28), and cannot use the Known-Claim Exclusion to deny a defense against these false allegations.

In addition to the above arguments, Underwriters suggests there is no coverage because there is only one continuous "Accident" that began before the Policy's retroactive date, June 17, 2013. (Policy at 4.) However, the Kipu Amended Complaint alleges wrongful conduct which begins in October 2013, continued into 2015, and continues today. (*See* Kipu Compl. ¶ 22 ("disproportionately high" number of logins by Solutions between October 15, 2013 and

---

[15] The Kipu Complaint and Kipu Amended Complaint are based entirely on unsupported (and false) speculation and innuendo. (*See* Kipu Compl., ¶¶ 22, 27 (inferring that an abnormally high number of login attempts proves that the Solutions Parties were copying and infringing the Kipu EMR and its advertising ideas); Kipu Am. Compl., ¶¶ 46 (same).). As subsequent pleadings in the Kipu Action explain, all of the Defendants, including the Solutions Parties, deny any attempt to copy or duplicate any portion of the Kipu System, specifically deny the deliberate attempt to do anything wrong, and instead explain that the number of logins was driven by the sincere desire to extricate Solutions' patient information from the disastrous Kipu implementation.

[16] The need for a conclusive factual determination is also confirmed by Exclusion IV.3.(y)., which excludes coverage for certain "actual or alleged" violations of federal, state, or local statutes. (Policy at 40.) If Underwriters had wanted to exclude from coverage a mere allegation that the insured knew a claim was likely to occur, then Underwriters could have drafted its exclusion to do that. It did not.  Thus, when the Known-Claims exclusions references knowledge, it means actual knowledge and not alleged knowledge.

November 15, 2015); ¶ 35 (unauthorized attempts at access in January, 2014); ¶ 36 ("voluminous" logins continuing into January, 2014); ¶ 48 ("launch of copycat EMR in January, 2015 causing the advertising injury; ¶ 50 (twenty additional logins in September 2015 and October 2015, this time through another Kipu Client); ¶ 90 (infringement continuing until "early 2016," when Kipu clients notified Kipu of product "derived and/or copied from Kipu EMR System"); ¶ 92 ("infringing and unlawful acts" are continuing, and injunction sought to prevent future acts); Kipu Am. Compl., ¶¶ 34, 46, 57, 61, 97 (making similar allegations).) )

The Kipu Amended Complaint unambiguously alleges that a competing EMR system was first marketed and sold in January 2015. (Kipu Am. Compl., ¶ 57.) That "event or happening" is what allegedly "result[ed] in . . . Advertising Liability"—here, copyright or trade dress infringement. (Policy at 41.) There can be no dispute that this Advertising Liability could not have existed prior to January 2015, which is after the retroactive date. Underwriters' claim of one continuous accident is, therefore, unavailing.

### C.   The Punitive Damages Exclusion Does Not Absolve Underwriters Of Its Duty To Defend the Solutions' Parties Against Claims for Compensatory Damages.

The Policy excludes coverage for punitive or exemplary damages (Policy at 35), and Underwriters cites that exclusion as a basis for its refusal to defend the Solutions Parties. The Kipu Amended Complaint repeatedly seeks equitable relief and compensatory damages—neither of which are excluded by the punitive damages exclusion and both of which are covered by the Policy. (*See, e.g.*, Kipu Compl., ¶ 171 (claim for actual damages); ¶ 180 (claim for compensatory damages); ¶ 185–86 (claim for preliminary and permanent injunctive relief) ¶¶ 191, 195 (seeking injunctive relief arising out of Defendants' alleged "advertising and marketing" of "competing EMR software which…is of inferior quality to the Kipu EMR system"); Kipu Am. Compl., ¶¶ 176, 185, 190–91, 200 (similar allegations).)

Underwriters may not have the duty to *indemnify* Solutions for punitive damages, but that in no way excuses Underwriters from its duty to defend the Solutions Parties for claims seeking recovery of compensatory damages. *See Geovera Specialty Ins. Co. v. Huthins*, 831 F.Supp. 2d 1306, 1315–16 (M.D. Fla. 2011) (interpreting punitive damages exclusion and holding that insurer had "no duty to *indemnify* Defendants as to the amount awarded in the Underlying Action for punitive damages") (emphasis added).  Here again, "where part of the complaint falls within

the scope of the insured's coverage, and part of it does not, the insurer must defend against the entire complaint . . . ." *Mactown, Inc., supra*, 716 So. 2d at 292.

**D.      The Named Insured's Products Exclusion Does Not Apply Because The Zencharts EMR Is Not "Sold, Handled Or Distributed" By Solutions.**

Underwriters cannot rely on the Named Insured's Products exclusion (IV.3.(r).) because that exclusion applies only to "goods or products manufactured, sold, handled or distributed by the **Named Insured** or by others trading under its name." (Policy at 38.) The Policy defines "Named Insured" as the "entity or person identified in Item.1 of the Declarations," which, in turn, is "Solutions Recovery Center, LLC." (Policy at 3, 43.) The ZenCharts EMR system is not a "good[] or product[] manufactured, sold, handled or distributed by" Solutions. The Kipu Amended Complaint alleges the ZenCharts EMR system is sold, distributed, and owned by ZenCharts, not Solutions. (Kipu Compl., ¶¶ 48, 191; Kipu Am. Compl., ¶¶ 57, 63, 196.)[17] Underwriters also agrees that the ZenCharts EMR system is not a product of Solutions. (Am. Compl., ¶¶ 67, 71–72, 80, 86, 95.) Thus, this exclusion does not apply.

**E.      The "Business Enterprise" Exclusion Does Not Apply Because The Kipu Action Is Not A Collusive Suit.**

The Business Enterprise exclusion (Section IV.3.(a)) does not apply because there is no attempt to gain coverage for a collusive suit or to impose Solutions' business liability, if any, on Underwriters. The Policy excludes coverage for "any Claims made by or against or in connection with any business enterprise . . . . which is owned by any Insured or in which any Insured is a trustee, partner, officer, director or Employee." (Policy at 34.) Dan Callahan, Rick Glaser, and Sean Callahan are owners, officers, and employees of Zencharts, which makes ZenCharts a "business enterprise" within the definition of that term in the exclusion. But that fact alone does not mean that this exclusion applies here.

Courts have recognized that the principle purpose of the Business Enterprise exclusion is to avoid collusive suits that would shift an Insured's business risk from one entity to another or to that entity's liability insurer. *See Jeffer v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 703

---

[17] While there is no allegation that Solutions sold, handled or distributed the competing ZenCharts product, there are allegations that Solutions marketed and advertised the competing and allegedly infringing product to the detriment of Kipu and to the confusion of Kipu existing and prospective customers.  (*See* Kipu Comp. at ¶¶ 91–92, 147; Kipu Am. Compl., ¶ 47, 96–97, 153, 256.)

A.2d 316,322 (N.J. Sup. Ct. App. Div. 1997) (business enterprise exclusions has two purposes: "(1) to prevent collusive suits whereby malpractice coverage could be used to shift a lawyer's business loss onto the malpractice carrier and 2) to avoid the circumstance where an insured so intermingles his business relationships with his law practice that an insurance carrier incurs additional risk of having to cover the insured for legal malpractice claims relating to the conduct of business, rather than solely out of the professional practice."); *Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts & Youngs, P.C.*, 821 F.2d 216, 221 (3d Cir. 1987) ("The parties agree that the purpose of [business enterprise exclusion] in this malpractice policy is to prevent collusive suits whereby malpractice coverage could be used to shift a lawyer's business loss onto his or her malpractice carrier.").

Thus, the Business Enterprise exclusion would prevent coverage for the collusive claim brought **by** a business enterprise (in this case, ZenCharts) against the Insured (here, Solutions). We do not have that here.  The exclusion would also prevent coverage for claims made **against** a business enterprise (*i.e.*, ZenCharts). We do not have that here either.

The question is whether the claim against the Solutions Parties here was made "in connection with" the claims against ZenCharts and the other defendants. Underwriters interprets the phrase "in connection with" as encompassing any Claim *related to* an excluded business enterprise. According to Underwriters, since both ZenCharts and Solutions have been named as defendants and have common ownership, Solutions has no coverage for the claims against it simply because a related business enterprise (ZenCharts) has been named as a defendant.[18] Underwriters' interpretation (aside from its inherent illogic) also renders the phrase "by or against" meaningless. Any claim *related to* an excluded business enterprise encompasses Claims "by or against" that enterprise. If Underwriters had intended "in connection with" to mean "related to" it could have used the phrase "any Claim related to a business enterprise" or simply "any Claim in connection with any business enterprise," omitting the words "by or against." *Davis v. Nationwide Life Ins. Co.,* 450 So. 2d 549, 550 (Fla. Dist. Ct. App. 1984) ("If an insurer intends to restrict coverage, it should use language clearly stating its purpose."); *Berkshire Life Ins. Co. v. Adelberg,* 698 So. 2d 828, 830 (Fla. 1997) ("If this was [the insurance company's]

---

[18] Logically, the reverse would also be true, and ZenCharts would have no coverage under its liability policy simply because a commonly owned entity, Solutions, was named.  Thus, Underwriters' convenient argument negates coverage for both defendants simply because the plaintiff chose to name two commonly owned entities as defendants.

intent, the company should have so stated in unambiguous language."). Moreover, if Underwriters interpretation is correct, then the broad coverage afforded to insureds like Solutions is obviated simply by naming an affiliated defendant.   The exclusion, then, swallows the coverage, and Courts have not allowed that. *Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts & Youngs, P.C.*, 821 F.2d 216, 221 (3d Cir. 1987) ("If one were to read 'in connection with' to include Perma Tread's claims within the exclusion, the phrase would have no discernible limit. Under such an all-inclusive reading, many other non-collusive scenarios would result in the exclusion of malpractice claims from coverage, contrary to the purpose of the policy and the exclusion.").

The Eleventh Circuit has held that the existence of some covered claims and some claims excluded by the business enterprise exclusion obligated the insurer to defend the entire claim. *Clarendon Nat. Ins. Co. v. Vickers*, 265 F. App'x 890, 891 (11th Cir. 2008). On summary judgment before the district court, the trial court held that certain claims arising out of the insured's capacity as "trustee of a fund or trust" (the "Probate Action") were excluded by the business enterprise exclusion. *Clarendon Nat'l Ins. Co. v. Vickers*, No. 05-60805-CIV, 2006 WL 8434797, at *7 (S.D. Fla. July 27, 2006), *rev'd sub nom. Clarendon Nat. Ins. Co. v. Vickers*, 265 F. App'x 890 (11th Cir. 2008).   The trial court did confirm that other claims which alleged covered malpractice by the attorney (the "Federal Action") were not subject to the business enterprise exclusion. *Id*. citing *St. Paul Fire & Marine Ins. Co. v. Icard, Merrill, Cullis & Timm, P.A.*, 196 So. 2d 219, 222 (Fla. Dist. Ct. App. 1967) (holding that if some of the allegations in the underlying complaint are covered and some allegations are uncovered, the insurer has an obligation to defend the entire lawsuit).   Even though the business enterprise exclusion did not apply, the trial court held that the dishonest acts exclusion did.   Thus, the trial court refused to impose a duty to defend on the insurer. *Id.*

On appeal to the Eleventh Circuit, the Court reversed the trial court and held that "the doubt must be resolved in favor of finding a duty to defend."  *Clarendon*, 265 F. App'x at 891. Reversing the trial court's determination with respect to the Probate Action, the Eleventh Circuit found that "there is at least one allegation with respect to which there is coverage and a duty to defend."  *Id*.  One claim alleged that the insured was acting as a co-trustee, and not as an officer or director of any business enterprise, and that one allegation was sufficient to invoke the duty to defend. *Id*.  In this case, there are at least two claims providing coverage, copyright and trade

dress infringement, those claims are asserted against the Solutions parties without regard to their affiliation with any business enterprise, and those claims should likewise be covered.

At the very least, the phrase "by or against or in connection with" is ambiguous, especially in light of the rule that exclusion must be construed strictly against Underwriters and in favor of coverage. *See STD Enterprises, Inc.*, 395 F.Supp.2d at 1146 ("Doubts as to whether a duty to defend exists are resolved in favor of the insured, and exclusionary clauses in insurance contracts are to be construed liberally in favor of the insured."). Underwriters cannot avoid is duty to defend based on the Business Enterprise exclusion.

**F.      Underwriters Cannot Meet Its Burden To Show That Solutions Received Profits To Which It Was Not Legally Entitled.**

The Policy excludes coverage for illegal profits, saying it does not cover claims arising out of an Insured "gaining any profit, remuneration or advantage to which such Insured was not legally entitled." (Policy at 39.) Underwriters has taken the position that this exclusion bars coverage and its duty to defend.

That is not so. First, the Kipu Amended Complaint and the facts alleged therein demonstrate that this exclusion does not apply. As explained above, Solutions does not own ZenCharts and does not sell ZenCharts. (Kipu Compl., ¶¶ 48, 191; Kipu Am. Compl., ¶¶ 57, 195; Am. Compl., ¶¶ 67, 71–72, 80, 86, 95.) Thus, the Kipu Amended Complaint does not allege, and Underwriters cannot show, that Solutions gained any profit or advantage related to ZenCharts and to which it "was not legally entitled." (Policy at 39.)

Second, even if the Solutions Parties had profited from ZenCharts, the exclusion still would not apply. Many courts have only applied this exclusion when the profits themselves were illegal and not merely the result of a violation of law. *See Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 400 (D. Del. 2002) (holding that an almost identical exclusion did not apply to profits that were merely the "by-product" of an allegedly illegal act). The plain language of the Policy confirms that this approach is correct. The Policy covers Advertising Liabilities, which includes claims for "infringement of copyright, title slogan, trade dress, or advertising idea." (Policy at 41.) If Underwriters' interpretation is correct, then this coverage is illusory because such claims necessarily involve profits that are obtained from selling an infringing product. *See Alstrin*, 179 F. Supp. 2d. at 398, 400 (explaining that almost all complaints will allege that the defendant improperly benefited from the challenged conduct and that, if a similar exclusion were given a broad interpretation, "the broad coverage" provided by the policy "would

16

be rendered valueless by this exclusion"). Third, Kipu's allegations are meritless (and at a minimum, vigorously denied) and, therefore, Solutions Parties were legally entitled to any profit received. Because Underwriters promised to defend "groundless, false or fraudulent" claims, (Policy at 38), it cannot avoid its duty to defend based on the mere assumption that Kipu will prevail in the underlying action. *See Bradfield*, 143 F.Supp. 3d at 1232; *see also Gray v. Zurich Ins. Co.*, 419 P.2d 168, 175 (Cal. 1966) (explaining that broad promise to defend meritless suits rendered scope of exclusion for intentional conduct ambiguous, at least for determining the insurer's duty to defend). Until there has been an adjudication that the Solutions Parties received profits to which they were not legally entitled, there is no basis to hold that the exclusion unquestionably applies.

      **G.**    **The Exclusion Precluding Coverage For Violations Of Anti-Trust, Restraint Of Trade, Unfair Competition, Price Fixing And Unfair Or Deceptive Trade Practices Or Consumer Protection Laws Does Not Relieve Underwriters Of Its Duty To Defend.**

Exclusion IV(3)(y) bars coverage for claims "based upon or arising out of any actual or alleged violation of any federal, state, or local anti-trust, restraint of trade, unfair competition, or price fixing law, unfair or deceptive trade practices, or consumer protection any rules or regulations promulgated thereunder." (Policy at 40.) Here, the factual allegations in the Kipu Action unambiguously trigger the duty to defend because they include copyright and trade dress infringement causing compensatory damages—neither of which are excluded by Exclusion IV(3)(y). Indeed, Underwriters admits there are allegations of a covered Advertising Injury in the Policy. (*See* Doc. 33-1, Letter from Rory Jurman to Nicholas Novack dated April 16, 2013 at 13 ("Though the Complaint contains allegations that may otherwise qualify as Advertising Liability . . . .").)

But more to the point, Underwriters' reliance on this exclusion necessarily assumes that <u>all</u> of the allegations of the Kipu Amended Complaint concern violations of the authorities included in Exclusion IV(3)(y). That assumption is false because the labels attached to the counts in the Kipu Action are simply irrelevant. *See Harris Corp. v. Travelers Indemn. Co.*, No. 96-166-CIV-ORL-19A, 1998 WL 1657171, at *2 (M.D. Fla. March 19, 1998) ("[T]he theories advanced and labels used in a complaint are subordinate to the facts alleged for the purpose of determining the duty to defend."). Here, there are multiple factual allegations within the scope of the Policy but outside the scope of this exclusion. (*See e.g.* Kipu Compl., ¶¶ 91–92, 171, 180, 185–186,

17

191, 195, 213–214; Kipu Am. Compl., ¶¶ 96–97, 176, 185, 191, 218–19.) Underwriters' dependence on Exclusion IV(3)(y) is both misplaced and meritless.

## CONCLUSION

This Court should enter judgment requiring Underwriters to defend the Kipu Action.

[signature page follows]

Dated: November 8, 2018.

Respectfully submitted,

BALCH & BINGHAM LLP

*/s/ Geremy W. Gregory*
GEREMY W. GREGORY
(FL Bar No.  102645)
ggregory@balch.com
841 Prudential Drive, Suite 1400
Jacksonville, FL 32207
Telephone: (904) 348-6875
Facsimile: (904) 396-9001

Walter H. Boone (MSB #8651)
(Admitted *pro hac vice*)
wboone@balch.com
188 East Capitol Street, Suite 1400
P. O. Box 22587
Jackson, MS 39225-2587
Telephone: (601) 965-8179
Facsimile: (888) 956-9542

Steven C. Corhern (ASB # 3130V84C)
(Admitted *pro hac vice*)
scorhern@balch.com
1901 Sixth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 226-8765
Facsimile: (205) 448-5798

***Attorneys for Solutions Recovery Center, LLC, Daniel J. Callahan, Sean Callahan, and Richard Glaser***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Response to Plaintiff's Motion to Dismiss Amended Counterclaim was filed via the CM/ECF System, and served electronically or via U.S. Mail on this 8th day of November, 2018, on all counsel or parties listed below:

Rory Eric Jurman
rjurman@fowler-white.com
Steven S. Cula
scula@fowler-white.com
FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
*Counsel for Plaintiff, Certain Underwriters at Lloyd's, London, Syndicates 2623/623*

*/s/ Geremy W. Gregory*
GEREMY W. GREGORY